**In re INTERSTATE STORES, INC., formerly known as Interstate Department Stores, Inc., et al., Debtors.**

**Bankruptcy Nos. 74 B 614–802.**

United States Bankruptcy Court, S. D. New York.

Jan. 9, 1980.

Shea & Gould, New York City, for trustee.

White & Case, Zalkin, Rodin & Goodman, New York City, co-counsel to the Secured Bank Creditors.

Rubin, Baum, Levin, Constant & Friedman, New York City, for Meshulam Riklis.

## DECISION ON APPLICATIONS FOR THE ALLOWANCE OF COMPENSATION

EDWARD J. RYAN, Bankruptcy Judge.

On April 13, 1979, this court made its decision on allowances in these proceedings for the reorganization of corporations. The history of the case is therein recited and need not be repeated at this time.

There remain for resolution the joint applications of White & Case and Zalkin, Rodin & Goodman, co-counsel to the secured bank creditors, and the application of Meshulam Riklis, a creditor.

In the joint application of White & Case and Zalkin, Rodin & Goodman, applicants and the secured bank creditors seek a first and final award of compensation in the amount of $547,095 for legal services rendered to the secured bank creditors during the Chapter X proceedings and reimbursement of $25,668.04 of expenses. Substantially all of this money has been paid or promised to the joint applicants by the secured bank creditors.

The joint application is premised on two theories. First, the joint applicants allege that the money is due them under a pre-petition contractual obligation on the part of Interstate to pay the secured bank creditors all expenses which they incur in connection with the enforcement and repayment of loans, including reasonable fees and disbursements of special counsel for the Banks. Second, the joint applicants allege that their services were beneficial to the administration of the estate and contributed to the reorganization plan and its confirmation and are therefore compensable under Chapter X Rule 10–215(c)(1), and Sections 241(5) and 243 of the Bankruptcy Act.

On May 22, 1974, the debtors herein filed petitions in proceedings for an arrangement under Chapter XI of the Bankruptcy Act, and on June 13, 1974, the proceedings were converted to Chapter X reorganization cases. In accordance with Section 196 of the Bankruptcy Act, the court fixed a bar date for filing proofs of claim of September 30, 1974, which date was subsequently extended until October 1, 1975. Prior to the bar date, each of the banks filed appropriate proofs of claim. Two banks specifically included legal fees in their proofs of claim and were paid these fees in the manner provided for in the plan. The proofs of claim of the other banks either explicitly stated that no other out-of-pocket expenses, such as legal fees, were due and owing, omitted the subject entirely or, in the case of two banks, stated that claimant is incurring "out-of-pocket costs and expenses, including legal expenses, which the Debtor is obligated to pay Claimant under terms of the aforementioned Agreement, the total amount of which cannot be determined until these proceedings have concluded, at which time Claimant will file an amended proof of claim setting forth the amount of such out-of-pocket costs and expenses." But none of the banks filed any amended proofs of claim setting forth additional out-of-pocket expenses, including legal fees, prior to the entry of the order of confirmation on March 27, 1978, or even prior to the entry of the order of substantial consummation on August 2, 1978. Rather, on January 29, 1979, the banks' co-counsel filed their joint application for reimbursement under the debt instruments in addition to allowances under the Bankruptcy Act, thereby informing the trustee for the first time that

reimbursement under the debt instruments was sought.

The trustee contends that the assertion of a claim arising under the debt instruments is now time-barred and that under the provisions of the Bankruptcy Act and the plan payments under the plan are in satisfaction of all pre-petition obligations. Additionally, quoting from 6 *Collier on Bankruptcy*, paragraph 9.03 at pp. 1527–1528, he maintains that although the court possesses discretionary power to authorize extensions of time to prevent injustice, "reorganization courts have been very reluctant to reopen bar orders where the reorganization cases are practically completed, or the position of the parties thereto has substantially changed," and that in the case at bar, the bar order should not be reopened. We agree.

The joint applicants contend that their claim for expenses under the debt instruments is not time-barred because it is an administrative claim. We disagree. The contractual obligation to pay expenses incurred in connection with the enforcement and repayment of loans was incurred pre-petition and remains a pre-petition obligation subject to being liquidated as enforcement expenses are incurred. Besides, if the claim was in fact an administrative claim, it would only be allowable to the extent that the joint applicants' services contributed to the Plan or its confirmation or were beneficial to the administration of the estate, and such services will be compensated for under the provisions of the Bankruptcy Act and Rules.

Bankruptcy Rule 10–215(c)(1) states in pertinent part that

(B) Reasonable compensation and reimbursement of expenses may be allowed by the court to creditors . . . and the attorneys or agents for any of them . . . for services which are beneficial to the administration of the estate, for services which contribute to a plan which is approved or to the approval of a plan whether or not such plan is confirmed, for services which contribute to a plan which is confirmed or to the confirmation of a plan, and for services rendered in opposing a plan confirmation of which has been refused. (C) Reimbursement of expenses, including reasonable attorney's fees, incurred by the petitioning creditors may be allowed by the court.

This rule was enacted pursuant to the broad policy of Chapter X to democratize corporate reorganizations by inviting and encouraging meaningful creditor participation in the development and confirmation of a plan and in the administration of the estate. But it was not enacted to provide for compensation to creditors for their efforts in merely pursing their own self-interests where no resulting benefit to the plan or estate can be found.

We agree with the joint applicants as to some of their efforts that such efforts "fostered and enhanced, rather than retarded or interrupted, the smoothness which was displayed in so much of the reorganization history of the debtor." We think that their analysis of applications prepared by the trustee and discussions concerning these applications with the various parties, sometimes resulting in revisions, were to some extent responsible for the very small number of applications which were eventually opposed in adversary court proceedings and that accordingly some benefit accrued to the reorganization therefrom. We also think that the joint applicants contributed to the plan and reorganization in their attendance at certain hearings and examination of certain witnesses. We note in particular the last paragraph of a letter dated May 14, 1976, from counsel to the trustee to Henry Goodman of Zalkin, Rodin & Goodman which states, concerning the extremely large Esgro claim, that "I would think it would be helpful to our mutual cause if the Institutional Lenders supported the Trustees' opposition to the relief requested in the stay." In response, Mr. Goodman appeared before this Court on May 21, 1976, in opposition to the application of Esgro. Chapter X encourages such creditor participation, and we will not discourage it by refusing to compensate it.

We also think that the joint applicants' suggestions concerning the plan and other matters and meetings with respect to them are compensable because they benefited the plan and the reorganization. We think that even intelligent suggestions which were not eventually adopted benefited the plan and the reorganization in that they sharpened the issues and alternatives in the minds of all who heard them.

We agree that the joint applicants' meetings and conferences with secured lenders, the trustees and the trustees' counsel concerning the substantial store expansion program which Mr. Crowley desired to embark upon and which was proposed to be financed largely, if not entirely, with internally generated cash which the institutional creditors could claim as the proceeds as collateral resulted in a litigation-avoiding agreement and benefited the reorganization.

The joint applicants' services with respect to the determination of the feasibility of an out-of-court reorganization, the transfer of the case from Chapter XI to Chapter X, the preparation of the plan, and the preparation of the Note Conversion Agreement are compensable.

But a good deal of the services performed by the joint applicants for their clients were in no way beneficial to the plan or reorganization. For example, their opposition to various motions and positions of the trustee such as the trustee's position on the appropriate interest factor applicable to the banks' debts can hardly be said to have benefited the plan or reorganization. While we are compensating the joint applicants for that portion of their services which we think enhanced the smoothness of the reorganization, we certainly will not compensate them for fighting tooth and nail with the trustee in an effort to merely maximize their own clients' claims. Also, such services as the preparation and filing of creditors' claims are clearly non-compensable under the principles enumerated herein.

Furthermore, the joint applicants spent much of the time for which they seek compensation monitoring court proceedings for the banks without making significant contributions to the proceedings and preparing memorandums summarizing the proceedings for the banks. The purpose of most of this monitoring and memo preparation was merely to keep the banks informed of what was going on. To the very large extent that such monitoring did not benefit the reorganization, it cannot be compensated for.

The joint applicants' time records reveal a significant amount of wasteful and non-compensable duplication. For example, at one hearing White & Case had ten attorneys in the courtroom and at another hearing one week later they had nine attorneys present.

The joint applicants' records also reveal that excessive hourly rates of compensation are being requested. Most of the time was spent by non-partners who performed such routine tasks as reviewing applications, writing memoranda which often summarized the applications and attending court hearings. Specifically, non-partner time equalled 84 percent for White & Case and 75 percent for Zalkin, Rodin & Goodman. Nevertheless an average of $108.00 per hour is being requested for time that has not been recorded as completely as it should have been.

We conclude that while the joint application enumerates certain services which benefited the plan and reorganization, it discloses many others which merely serve to assert and maximize the claims of the joint applicants' clients against the estate and thus cannot be compensated for.

The foregoing illustrates how we have reached our conclusion, viz., by giving some examples of services which we find fall into each of the above two categories. In the decision on allowances dated April 13, 1979, it was stated that if applicants for allowances under the Bankruptcy Act and Rules "are held to too strict a standard of 'beneficial in the administration' or 'contribute to a plan', there would be an unfortunate chilling effect on such desired participation."

(p. 27) We have scrutinized the joint application at bar as well as all other applications for allowances with this principle in mind. We find that the fair value of the joint applicants' compensable services and disbursements aggregates $290,000.00, and pursuant to the broad Chapter X policy of rewarding present and encouraging future meaningful participation by creditor interests in reorganization proceedings, the joint applicants are hereby awarded $275,000.00 in fees and $15,000.00 in disbursements.

Now we turn to the creditor's application.

Meshulam Riklis, a creditor, applies for reimbursement of costs, expenses and reasonable attorneys' fees incurred in the proceedings.

Riklis filed a proof of claim which was allowed in these proceedings. The claim was based upon Senior Subordinated Notes which were in default. Section 113 of each note provides that the debtor is obligated to claimant for all costs and reasonable attorneys' fees incurred by claimant in enforcing such note. Pursuant to this section, Riklis is now making application for reimbursement of costs, expenses and reasonable attorneys' fees in the amount of $40,417.53.

He has made no claim for compensation on the grounds that his services benefited the estate or reorganization,[1] and no notice went out to creditors to that effect. Rather, his entire application is based on a provision of a pre-petition debt instrument.

■ The trustee contends that whereas the Riklis proof of claim did not include an amount for attorneys' fees or any reference to an unliquidated or contingent amount as would have been permitted under the provisions of Chapter X of the Bankruptcy Act, and whereas the Riklis application was not filed until July, 1978, almost four years after the bar date for filing proofs of claim

and four months after confirmation of the Plan, Riklis' claim is now time-barred. We agree. Accordingly, his application is hereby denied.

Settle an appropriate order.

---

1. Counsel to Riklis stated at the hearing that "I was not aware that there was some similarities, a good many similarities between their (Secured Bank Creditors and their Co-counsel) problems and ours . . . the greatest dissimilarity is the amount . . . Contrary to the Bank's position, I do not pretend that our participation in this case was for the purpose of contributing a great

deal to the plan in general. We had a private interest under the plan and there is no doubt about that. I think if I went through all of my services, I could spell out some few instances when I may have contributed something generally to the plan, but that wasn't our purpose and we don't pretend it was anything else . . . ."