### In re INTERNATIONAL COINS & CURRENCY, INC. (f/k/a Irish Coin Co.), Debtor.

#### Bankruptcy No. 81–00023.

United States Bankruptcy Court, D. Vermont.

Nov. 5, 1982.

See also Bkrtcy., 22 B.R. 127.

Peter B. Brittin, Montpelier, Vt., for debtor.

Joseph C. Palmisano, Barre, Vt., for Chittenden Trust and Farmers Home Admin.

R. Marshall Witten, Bennington, Vt., chairman of Unsecured Creditors' Committee.

Denise J. Deschenes, for Bucknell Press.

E. Guy Roemer, for FINSERV Computer.

David L. Ganz, for Food and Agriculture Organization of the United Nations.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

On September 1, 1982 Chittenden Trust Company and Farmers Home Administration, the Debtor, International Coins & Currency, Inc., and the Unsecured Creditors' Committee by their attorneys, Joseph C. Palmisano, Esquire, Peter B. Brittin, Esquire, and its chairman, R. Marshall Witten, Esquire, respectively, filed a Stipulation which reads as follows:

"1. The attorney's fees, expenses and administrative costs of the Chittenden in the amount of $163,049.77, noticed for hearing August 19, 1982 are approved.

"2. The Chittenden shall accept from the Debtor the sum of $35,000.00 within ninety (90) days from confirmation in lieu of any and all further claims by the Chittenden for pre-confirmation attorney's fees, expenses and administrative costs whether applied for or not on the date hereof.

"3. The Chittenden shall amend its Plan of Reorganization currently before the court as follows:

"(a) Paragraph IV.B.2.b. requiring the Debtor to issue additional stock to secure payment of post-confirmation attorney's fees, expenses and administrative costs shall be deleted.

"(b) A new Paragraph XI.1.f. shall be added to the Plan stating that the Bankruptcy Court shall retain jurisdiction of the case: 'To hear and determine all controversies relating to or concerning the assertion or claim of a default under the Plan and the right of any party to exercise any remedy provided in Article V.' The present subparagraph (f) shall be relettered (g).

"(c) The paragraph IV.B.3.a. agreement modifying the Lawrence Systems, Inc. Agreement shall be amended to provide:

"(i) All post-confirmation inventory levels shall be as set forth in Schedule A attached hereto.

"(ii) If pre-confirmation inventory levels exceed those set forth in Schedule A, Debtor may reduce such inventory levels by an amount equal to twice the sum of any payment on principal.

( # 4—Deleted per agreement)

"5. All parties shall withdraw any pending motions inconsistent with this Stipulation, and shall not hereafter file any pleading or initiate or take any other action, whether within the context of this matter or in a collateral matter (which shall not exclude any actions with respect to any personal guarantees of stockholders), which is inconsistent with the terms of the Plan.

"6. All parties shall support and vote for the Plan as amended by this Stipulation.

"7. The parties shall take all steps necessary to effectuate and implement fully the Plan as confirmed."

This Stipulation came on for hearing, after notice to creditors and parties in interest, with the following appearances:

Joseph C. Palmisano, Esquire, for Chittenden Trust Co., Peter B. Brittin, Esquire, for Debtor, with Cornelius Hogan, President of Debtor, R. Marshall Witten, Esquire, as Attorney for SIMA and as Chairman of the Creditors' Committee, Julian Goodrich, Esquire, for Theodore Issac, Denise J. Deschenes, Esquire, for Bucknell Press, Inc., David L. Ganz, Esquire, for Food and Agriculture Organization of the United Nations, Michael D. Caccavo, Esquire, for Seattle Times, M. Jerome Diamond, Esquire, for Monnaies et Medailles, Reunion des Musees Nationaux, et al. E. Guy Roemer, Esquire, for FINSERV Computer Corp.

Prior to the hearing, the Court received several objections by unsecured creditors which were principally directed to the amount stipulated to be paid to the Chittenden Trust Company as reimbursement for

attorney's fees, expenses and administrative costs.

At the hearing Bucknell Press, Inc., and FINSERV Computer, both unsecured trade creditors, by their respective attorneys, Denise J. Deschenes, Esquire, and E. Guy Roemer, Esquire, objected to the payment of any post-petition interest and any reasonable fees, costs or charges to Chittenden Trust Company as a secured creditor on the grounds that under § 506(b), these are recoverable from the collateral securing the indebtedness only to the extent that its value exceeds the amount of the secured claim of Chittenden.

On the other hand, the Food and Agriculture Organization of the United Nations by its attorney, David L. Ganz, Esquire, and R. Marshall Witten, Esquire, as Chairman of the Committee of Unsecured Creditors, argued vigorously in support of the approval of the Stipulation on the grounds that, under the Bankruptcy Code, a valuation hearing would be necessary to determine whether the Chittenden Trust Company was oversecured; that this would be very costly to the litigants and the delay resulting from a determination after hearing could, as a practical matter, very well result in a denial to the Debtor to continue its effort to rehabilitate itself under Chapter 11. This position was likewise emphasized by Chittenden Trust Company and the Farmers Home Administration by their attorney, Joseph C. Palmisano, Esquire, who additionally proposed that the Court approve the Stipulation in its present form and any party who was dissatisfied with the Court's Order of Approval could take an appeal. The President of the Debtor, Cornelius Hogan, outlined the progress that the Debtor had made in an attempt to rehabilitate itself under Chapter 11 and emphasized that at the beginning it was doubtful to all parties concerned whether there would be any chance of rehabilitation.

The Court is well aware that the financial situation of the Debtor is exactly as represented by its President at the hearing and even recalls his testimony at one of the hearings that an infusion of capital would be necessary to consummate a Plan of Reorganization. From recent financial reports it appears that the Debtor through the vigorous efforts of management, coupled with the opportunity to use the collateral which secures the indebtedness to Chittenden, has made remarkable financial progress, and this, much to the surprise of all parties to the case. It is noted, however, that the payment of approximately $600,000.00 received by Chittenden from insurance due to the untimely death of Steven Hochschild, one of the guarantors of part of the indebtedness to Chittenden contributed toward the improvement of the cash flow of the Debtor.

At the hearing the parties requested time for a conference which was granted and at the conclusion Bucknell Press, Inc., and FINSERV represented to the Court that they were withdrawing their objection predicated on § 506(b) of the Bankruptcy Code but that they were maintaining their position that the Court should determine whether the attorney's fees, expenses and administrative costs of Chittenden as recited in the Stipulation are reasonable.

Mr. Palmisano as attorney for Chittenden pointed out that he had not taken part in the conference which resulted in the partial withdrawal of objections by Bucknell and FINSERV and that he did not consider Chittenden to be bound by the negotiations which took place at the conference.

The secured obligation from the Debtor to Chittenden arises from a series of promissory notes and security agreements executed and delivered by the Debtor to Chittenden granting to Chittenden a security interest in inventory, accounts receivable, and other personal property, tangible and intangible. Some of the notes contained a provision incorporating the terms of certain loan and security agreements between the Debtor and Chittenden with reference to the agreements for performance of the respective rights and obligations of the parties. The loan and security agreements to which reference is made in the promissory note contain a provision that the borrower (the Debtor) shall pay to the Bank (Chitten-

den) on demand any and all expenses, including reasonable counsel fees, incurred or paid by the bank in protecting or enforcing the rights upon or under liabilities of the borrower or collateral. Likewise, certain of the notes provided that if they were placed in the hands of an attorney for collection the maker (the Debtor) agreed to pay all interest, costs and expenses of collection including attorney's fees.

§ 506(b) allows to holders of secured claims post-petition interest and any reasonable fees, costs or charges provided in the agreement under which such claim arose. This recovery is allowed only to the extent that the creditor is oversecured.

3 Collier 15th Edition 506–17 § 506.05

At the hearing on the Stipulation all objections were withdrawn but Bucknell and FINSERV continued to object to the attorney's fees, expenses and administrative costs of Chittenden and argued that the Court should determine the reasonableness of the amounts charged.

■ Implicit in any agreement providing for the payment of attorney's fees by the Debtor in case of default is a requirement that the attorney's compensation is reasonable. Even without objection the Bankruptcy Court is under a duty to allow only a reasonable attorney's fee if it is to be paid out of the bankrupt estate. See *In Re Garland Corp.*, (Mass.Bkrtcy., 1980), 8 B.R. 826, 829:

"Most important and controlling all other considerations, even prior Court approval of specific terms of compensation, is the duty of the Court to determine that all fees and allowances are reasonable, 11 U.S.C. § 328(a); *Carter v. Woods*, 433 F.Supp. 291, 3 BCD 503 (W.D.Mo.1977)."

Likewise, in the case of *In Re Erewhon, Inc.*, (Mass.Bkrtcy.1982), 21 B.R. 79, 86, the Court in referring to the allowance of attorney's fees said:

"The Court is charged with the responsibility to make an independent determination of the reasonable necessity of the services and the appropriate charges for said services as they apply not in general terms but to the specific matters before the Court."

Citing *In Re Eureka Upholstering Company, Inc.*, 48 F.2d 95, 96 (2d Cir.1931), the Bankruptcy Court for the District of Maine pointed out that determining that the fees sought represent only legal services is a judicial responsibility. *In Re Best Pack Seafood, Inc.*, (Me.Bkrtcy., 1982), 21 B.R. 852, 9 BCD 389, 390.

■ The judicial responsibility is especially imposed in cases where attorneys seek compensation out of the bankruptcy estate because as stated in *Erewhon, Inc.*, supra, at page 89 under the American system, "the law imposes on a party the duty to pay his own fees and expenses in vindicating his own personal interest." *United States v. Larchwood Gardens, Inc.*, 420 F.2d 531, 534 (3rd Cir.1970). See 21 B.R. at page 89.

There are various factors to be considered in fixing reasonable attorney's fees. Twelve of these are recited in 2 Collier 15th Edition 330–17, quoting from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). This litany was also expressed by this Court recently when it fixed what it considered reasonable compensation for legal services rendered by the attorneys for the debtor in this very case. See *In Re International Coins & Currency, Inc.*, (Vt.Bkrtcy., 1982), 22 B.R. 127, 129.

■ The most important of the twelve factors to be considered as they relate to reasonable compensation for legal services rendered by the Attorney for Chittenden as a secured creditor are: the time and labor required, the novelty and difficulty of the questions presented by the case, the skill requisite to perform the legal services properly, the amount involved and results obtained as a result of the attorney's services and the experience, reputation and ability of the attorney.

The Attorney for Chittenden has practiced in this Bankruptcy Court over a period of years and has clearly exhibited his experience, reputation and ability as well as the skill required to perform the legal services for his client properly. The history of this

case indicates that he has protected the collateral of Chittenden well. As a matter of fact, it appears that he has been overprotective and, as a result, he has become involved in collateral issues to which he has devoted a great deal of time and energy for which he has made charges which could have been eliminated or greatly reduced without jeopardy to the interest of his client. An analysis of these charges will follow.

The legal services rendered by Chittenden's Attorney were twofold: (1) those relating to the protection of Chittenden's collateral and the collection of its secured indebtedness; (2) those pertaining to the filing of a disclosure statement and of a plan of reorganization.

■ Chittenden's right to reimbursement for costs and a reasonable attorney's fee as part of its secured indebtedness has already been determined with the amounts to be fixed by this Court. In addition, even though the Attorney for Chittenden was rendering legal services primarily for the benefit of the bank as a secured creditor he is also entitled to reasonable compensation for legal services rendered in making a substantial contribution to a successful reorganization of the Debtor under Chapter 11. *In Re Richton International Corporation* (S.D.N.Y.Bkrtcy.1981) 5 C.B.C.2d 1019; 15 B.R. 854; *In Re Interstate Stores, Inc.* (S.D.N.Y.Bkrtcy., 1980) 1 B.R. 755. In this respect it is noted that the Debtor filed its Plan of Reorganization on June 24, 1981 which was amended on November 19, 1981, December 10, 1981 and February 18, 1982. These plans provided, inter alia, for payment to unsecured creditors of 5% in cash, 12½% in cash in installments, 15% in cash in installments and 15% in cash in installments, respectively. None of the plans submitted by the Debtor was confirmed and, after due consideration, the Debtor notified the Court that it had no intention to submit any further plan. The apparent reason for discontinuing its efforts was that the Debtor could not come forward with a plan which would satisfy the objections of Chittenden as a secured creditor. With this stalemate Chittenden took it upon itself to file a plan on April 16, 1982 which was amended on July 1, 1982. This amended plan provides, inter alia, for payment in cash of 30% to unsecured creditors in installments. Chittenden did also file a disclosure statement to which there has been no objection and it has met the requirements for approval by the Court. With the financial progress made by the Debtor and the reasons previously recited there is a strong likelihood that the necessary acceptances will be obtained and the plan confirmed. Chittenden's plan, if consummated, is a remarkable improvement upon those submitted by the Debtor.

The parties by their Stipulation filed September 1, 1982 request the Court to approve "The attorney's fees, expenses and administrative costs of the Chittenden in the amount of $163,049.77, noticed for hearing August 19, 1982" and the additional sum of $35,000.00 for pre-confirmation attorney's fees, expenses and administrative costs. Apparently the former relate to the legal services rendered in the protection of Chittenden's collateral and the collection of its secured indebtedness while the $35,000.00 charge pertains more to services rendered in the preparation of the secured party's disclosure statement and plans of reorganization.

The claim of Chittenden for attorney's fees and expenses is included in a Second Amended Petition for Allowance filed March 19, 1982 reciting that they consist of the following:

"1. Attorneys fees to estimated confirmation — $144,657.21
2. Expenses — 4,631.00
3. Accountant Jay Gordon fees to date — 6,054.91
4. Advanced payment of Lawrence Warehouse Agreement on behalf of ICC — 11,291.60
5. Jon Eggleston, Esq. — 1,046.05"

■ These total $167,680.77. However, the recited expenses of $4,631.00 are not itemized as required by Local Rule 13(5) and for that reason the Applicant has apparently decided to waive them. The

charges of $6,054.91 for accounting services, of $11,291.60 to Lawrence Warehouse for certification of inventory and of $1,046.05 to Jon Eggleston, Esquire, were incurred for the protection of the collateral subject to Chittenden's security interest. The Court considers these necessary and reasonable expenses and should be allowed.

In support of that portion of its Application for Attorney's fees of $144,657.21 a schedule of charges has been attached reciting legal services rendered from December 2, 1980 through March 22, 1982 for a total of 1,440 hours. This indicates an hourly rate of $100.00.

Under § 330 of the Bankruptcy Code one of the factors to be considered in fixing reasonable compensation for actual and necessary legal services is the cost of comparable services other than in a case under Title 11 of the Code. Further, as stated in the case of *In Re TMT Trailer Ferry, Inc.,* 577 F.2d 1296, 1304, (5th Cir.1978), "the court, either trial or appellate, is itself an expert on the question (of attorneys' fees) and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid or testimony of witnesses as to value."

It is the Court's observation that $85.00 an hour is a reasonable rate for the type of services rendered by the Attorney for Chittenden in this proceeding. However, under proper circumstances, an hourly rate of $100.00 would not be considered excessive. Although this Chapter 11 Proceeding was somewhat unusual most of the legal services rendered were of a routine nature.

Even though a number of hearings were scheduled in connection with the issues raised, there was no extended litigation and, as it appears from the items listed in the schedule, most of the time was spent in conferences, the preparation of legal documents, discovery, and matters of a routine nature. Unfortunately, during most of the proceeding there was much disagreement between the Attorneys for the Debtor and Counsel for Chittenden with the result that a great deal of unnecessary time was spent in conferences rewriting of the Plans to which Chittenden objected and the filing of pleadings which were not pursued.

In this respect it is noted that although the number of hours fairly and properly devoted to a case may aid the Court in arriving at a reasonable compensation, it should not serve as one of the predominant considerations. Undue emphasis on the factor of time fails to acknowledge the fact that skill and experience may accomplish much in a short period of time. It also ignores the fact that some services are routine and ordinary while others involve complex and difficult issues. Rather, it has been suggested that the expeditiousness in bringing the administration of the estate to a successful conclusion ought to influence the amount of compensation at least as much as time consumed since the policy under both the Act and the Code is to encourage the prompt administration of estates with the least delay consistent with the legal rights of the parties. 2 Collier 15th Ed. § 330.05, 330–21–2. See also *In Re Doyle-Lunstra Sales Corporation* (D.S.D., 1982) 19 B.R. 1003, 6 C.B.C.2d 1330 holding that routine and ministerial services should be compensated at a lower rate than truly legal services, irrespective of the experience and competency of the attorney who performs them.

The Attorney for Chittenden has adequately protected its security which may well result in payment in full of principal and interest. However, he received considerable assistance from the improved financial situation of the Debtor and the liquidation of its inventory in an orderly fashion which resulted from the curtailment of expenses. In addition, the untimely death of one of the guarantors of the notes received by Chittenden from the Debtor resulted in the payment of the proceeds of an insurance policy in the sum of $600,000.00.

After a careful review of the nature of the legal services rendered and the time charged, the Court is convinced that the amount of $144,657.21 requested by Chittenden for attorney's fees covering the period from December 2, 1980 through March 22, 1982 is not reasonable but rather should be allowed at $100,000.00.

On the other hand, the Court considers the request for approval of the sum of $35,000.00 for attorney's fees to be paid 90 days from confirmation in lieu of any and all further claims by Chittenden reasonable. Chittenden has indeed, through its attorney, made a substantial contribution toward the reorganization of the Debtor by the filing of its Disclosure Statement and Amended Plan which now stands for confirmation. If finally successful it will result in a meaningful dividend to the unsecured creditors.

## ORDER

Now, therefore, upon the foregoing and upon further consideration of the Stipulation executed by Chittenden Trust Company and Farmers Home Administration by Joseph C. Palmisano, Esquire, its attorney, by International Coins and Currency, Inc., by Peter B. Brittin, Esquire, its attorney, and by the Unsecured Creditors' Committee by R. Marshall Witten, Esquire, its chairman, and filed September 1, 1982,

IT IS ORDERED that the Stipulation is approved with the following exception: Paragraph numbered (1) is deleted and the following is substituted:

Chittenden is allowed attorney's fees of $100,000.00 plus reimbursement of expenses:

| | |
|---|---|
| (a) Accountant Jay Gordon | $ 6,054.91 |
| (b) Lawrence Warehouse | 11,291.60 |
| (c) Jon Eggleston, Esquire | 1,046.05 |