**In the Matter of ASTRO–NETICS, INC., a Michigan corporation, Debtor.**

**Bankruptcy No. 82–02797–G.**

United States Bankruptcy Court, E.D. Michigan, S.D.

April 4, 1983.

---

**4.** Affidavit of Ira B. Charmoy, Esq. at ¶ 8(a); Affidavit of Herbert J. Bahre at ¶ 8.

**5.** Affidavit of Ira B. Charmoy at ¶ 8(c).

**6.** *See* 23 B.R. at 463.

David K. McDonnell, Detroit, Mich., for Bank NBD Troy.

John S. Regan, Detroit, Mich., for Astro-Netics.

## OPINION AND ORDER

RAY REYNOLDS GRAVES, Bankruptcy Judge.

This matter comes before the Court upon the application of NBD Troy Bank, N.A. ("NBD Troy"), a national banking association and secured creditor of the Debtor, Astro-Netics, Inc., for loan servicing fees and attorneys' fees pursuant to section 506(b) of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 506(b). The Debtor objects to the requested fees on the grounds that the actions of NBD Troy, rather than Debtor's actions, precipitated the litigation that gave rise to the application for fees before us today; therefore, Debtor argues, not only is NBD Troy not entitled to fees under Section 506(b), but the requested fees are unreasonable as well.

We find that NBD Troy is an oversecured creditor of the Debtor, that the loan documents in question provide for the payment of servicing and attorneys' fees and, therefore, NBD Troy is entitled to reimbursement pursuant to 11 U.S.C. § 506(b). We also find that the fees as requested are not reasonable and a lesser amount is thus awarded.

## STATEMENT OF FACTS

On January 28, 1981, NBD Troy and Debtor entered into a term loan agreement for $230,000, evidenced by a promissory note that provided, in pertinent part, that in the event of acceleration, the Debtor "will pay to the holder hereof [NBD Troy] such further amount as shall be sufficient to cover the cost and expense of collection, including reasonable attorneys' fees and expenses."

On January 28, 1981, NBD Troy and Debtor also entered into a short term loan agreement for $400,000, evidenced by a short term note. This note was converted to a demand note on April 26, 1982, which provided, in pertinent part, that in the event of default and demand, Debtor's indebtedness "shall include reasonable attorneys' fees and legal expenses" of NBD Troy.

On March 15, 1982, NBD Troy loaned an additional $3,899.98 to debtor, evidenced by a promissory note which similarly provided that in the event of default and acceleration, the Debtor's indebtedness "shall include reasonable attorneys' fees and legal expenses" of NBD Troy.

This indebtedness was secured by a first and prior lien and security interest in all of Debtor's inventory, machinery and equipment, and accounts receivable, as well as by a second mortgage lien on debtor's plant. Each of the security agreements provided that the collateral secured not only the principal indebtedness and accrued interest, but also secured NBD Troy's costs of collection, including legal fees.

On May 5, 1982, NBD Troy demanded payment of the demand note, and accelerated the balances due on the 1981 and 1982 term notes.[1] On May 12, 1982, Debtor filed its Chapter 11 petitions and was appointed Debtor-in-Possession.

On May 14, 1982, NBD Troy loaned $75,000 to Debtor-in-Possession, evidenced by a promissory note ("D–I–P Note") which provided that "in the event of default, all costs and expenses of collection, including reasonable attorneys' fees, shall be added to and become a part of the total indebtedness." The parties subsequently entered into a Loan Modification Agreement, which provided in part that all of NBD Troy's security interests and liens "secure all sums due to NBD [Troy] from Astro-Netics, including principal, interest and the costs of collection, including reasonable attorneys' fees,

---

1. The validity of NBD Troy's demand and ac-    celeration actions is not in dispute.

whether due from Astro-Netics, as debtor prior to the filing of bankruptcy proceedings, or due from Astro-Netics, as Debtor-in-Possession after the filing of bankruptcy proceedings and during the pending thereof." [2]

The Debtor and Debtor-in-Possession's indebtedness to NBD Troy was further secured by a security interest in the Debtor-in-Possession's inventory, machinery, equipment and accounts receivable, and a mortgage lien on the Madison Heights plant. The security documents covering the assets of the Debtor-in-Possession similarly provided that the collateral secured NBD Troy's collection costs and attorneys' fees, as well as the principal and interest of the loan obligations.

On May 14, 1982, this Court entered an order approving the D–I–P Note, the Loan Modification Agreement, and the security agreements. The order further provided:

NBD [Troy] shall be granted a priority under Section 364(c) of the Bankruptcy Code inrespect to such indebtedness and obligation of debtor over all other costs and expenses of administration, including those described in Sections 503(b) and 507(b) of the Bankruptcy Code. No expense of any future proceedings that may develop out of this proceeding, including litigation in bankruptcy or other proceedings under the Bankruptcy Code shall be charged against the property of the Debtor in which NBD [Troy] holds security interests or liens.

The Debtor-in-Possession defaulted on the D–I–P Note and NBD Troy brought its motion to convert this case from Chapter 11 to Chapter 7. Following three days of trial, this Court entered its order of conversion on November 24, 1982. On December 16, 1983, this Court lifted the automatic stay and permitted NBD Troy to collect the Debtor's accounts receivable directly from the account debtors.

NBD Troy now moves for reimbursement, pursuant to Section 506(b) of the Code, of its attorneys' fees in the amount of

$29,270.00, expenses of collection in the amount of $651.00, and servicing fees in the amount of $4,245.27, totalling $34,166.27.

## CONCLUSIONS OF LAW

■ Section 506(b) of the Code, 11 U.S.C. § 506(b), provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

This section of the Code thus requires, as a prerequisite to recovery, that the security documents provide for the allowance of attorneys' fees and expenses incurred as a result of the creditor's pursuit of its claim against the debtor. *In re Virginia Foundry Co., Inc.,* 9 B.R. 493 (W.D.Va.1981). There is no dispute at bar that the parties' security documents contain clauses permitting such recovery.

The second condition that a § 506(b) claimant must meet is that the value of the security must be greater than the value of the secured creditor's claim; that is, the creditor must be an oversecured creditor. *In re Marino,* 23 B.R. 321, 7 C.B.C.2d 182, 183 (Bkrtcy.W.D.Mich.1982). In the case for consideration, NBD Troy has collected the full amount of its claim from the recovery of accounts receivable. The $108,000.00 in excess of its claim which NBD Troy collected was turned over to the Trustee. Consequently, there can be no question that NBD Troy is oversecured.

Debtor's objections focus primarily on the energies expended by NBD Troy in the pursuit of its claims against Debtor; Debtor basically argues that NBD Troy's own actions, not Debtor's, caused a conflict between NBD Troy and the Internal Revenue Service. Additionally, Debtor argues that only a motion to lift the automatic stay so as to allow a creditor to enforce its rights

---

**2.** Loan Modification Agreement at page 4.

falls within 11 U.S.C. § 506(b); therefore, Debtor concludes, NBD Troy acted in bad faith, brought unnecessary actions to enforce its rights, and is consequently not entitled to § 506(b) recovery. We are inclined to disagree.

The Bankruptcy Code provides for a number of remedies that a creditor may attempt to seek. These remedies include preference actions,[3] objections to discharge,[4] exceptions to discharge,[5] motions to convert,[6] and complaints to lift the automatic stay.[7] We are not persuaded that Congress intended that these remedies be mutually exclusive, as Debtor would have this Court believe. Section 103(a) of the Code provides "[e]xcept as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under Chapter 7, 11, or 13 of this title." Many creditors' remedies are provided for in chapters 1, 3, and 5. No limiting language concerning the choice of remedies exists. Debtor has failed to show bad faith, save mere mention, on the part of NBD Troy. Hence, we hold that the Code remedies are not mutually exclusive.

Because NBD Troy has satisfied the conditions for recovery under § 506(b), the remaining issue concerns the reasonableness of the fees requested. *In re International Coins & Currency, Inc.,* 26 B.R. 256 (Bkrtcy. D.Vt.1982).

With respect to the review of attorneys' fee applications this Court has adopted an analysis much like the analysis employed by United States Court of Appeals for the Fifth Circuit in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974). The *Johnson* decision elicited twelve factors for consideration of a fee request: 1) the time and labor required; 2) novelty and difficulty of the legal issues; 3) the requisite skill involved; 4) the preclusion of employment by the attorney due to the acceptance of the case; 5) the customary fee charged by lawyers within the same geographic location; 6) whether the fee is fixed or contingent; 7) time limitations; 8) the results obtained; 9) the attorney's experience and ability; 10) the "undesirability" of the case; 11) the nature and extent of the attorney-client relationship; and 12) awards in similar cases.

As to the case at bar, counsel for NBD Troy has expended 263.9 hours in this matter, of which 29.4 hours were expended by counsel's legal assistant, equalling 293.3 hours. The requested attorneys' fees equal $29,270.00. This amount represents an hourly billing of approximately $100.00 per hour. Of the 263.9 attorney hours billed, approximately 57.4 hours represent telephone calls and correspondence. These tasks, while undoubtedly an essential part of any law practice, are not tasks that require the skills and abilities that research, writing and litigation require. Counsel for NBD Troy is indeed able and conscientious. The litigation involved proved sophisticated and challenging. A reasonable attorneys' fee award, therefore, is $20,136.00. The award for the legal assistant is the reasonable amount of $1,029.00. Expenses of $651.00 are allowed, and the $4,245.27 expenses incurred in servicing the loans are allowed. Thus, the total § 506(b) award equals $26,061.27, to be treated as an allowed secured claim against Debtor.

IT IS SO ORDERED.

---

3. 11 U.S.C. § 547.

4. 11 U.S.C. § 727.

5. 11 U.S.C. § 523.

6. 11 U.S.C. § 1112.

7. 11 U.S.C. § 362.