In re CALUMET REALTY COMPANY and Magoune Holding Corporation, as Co-Partners trading as "North Towne Investors" and "North Towne Apartments" (a partnership), Debtors.

Bankruptcy No. 80–02476K.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 18, 1983.

Andrew M. DiPietro, Jr., New Haven, Conn., Lawrence J. Tabas, Barbara Hadley Katz, New Haven, Conn., Richard M. Tiger and David M. Still, Philadelphia, Pa., for debtors.

Scott E. Denman, Philadelphia, Pa., for PGW.

OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

The issue before the Court is whether to allow a creditor of this estate, Philadelphia Gas Works ("PGW"), payment of administrative expenses under section 503(b)(3)(B) or (D) of the Bankruptcy Code.

PGW claims that its efforts during prosecution of an adversary proceeding against four (4) defendants [1] benefited the estate; therefore, PGW argues, it is entitled to be reimbursed by the estate for expenses and counsel fees.

We disagree. We have examined the applicable Code provisions and PGW's efforts throughout the time period in question and find that these efforts do not fall within the meaning of either section 503(b)(3)(B) or (D). Therefore, we must deny PGW's request for administrative expenses.

1. The adversary complaint filed under adversary proceeding no. 83–0203K named Provident National Bank, Transatlantic Capital Corporation, All American News, Inc. and Shawn Lewis Construction Company as defendants.

The relevant facts are as follows:[2]

The debtor filed an adversary complaint to compel turnover on January 31, 1983. The complaint named Provident National Bank, Transatlantic Capital Corporation, All American Investment News Inc. and Shawn Lewis Construction Co., Inc. as defendants. The summons and notice of trial set March 3, 1983 as the answer date and scheduled a trial on the merits for March 16, 1983.

The complaint was filed pursuant to a stipulation between PGW and the debtor.[3] Some background information on the stipulation is relevant here. As of January, 1983, PGW was dissatisfied with the debtor's reorganization efforts and concerned about growing post-petition debts owed to PGW for continuing gas service. PGW filed a complaint for injunctive relief against the debtor and a motion for appointment of a trustee in early January alleging mismanagement by the debtor and failure to propose an effective plan of reorganization. At the January 21, 1983 hearing on PGW's motion to appoint a trustee, the debtor and PGW entered into an agreement whereby PGW would forebear from prosecuting its motion and complaint if the debtor would institute an adversary proceeding to compel turnover of $13,483.00, which was being held in an escrow account at Provident National Bank.

Provident National Bank (Provident) filed a timely answer to the complaint and a counterclaim and crossclaim in the form of a motion for interpleader.

Counsel for the three (3) defendants other than Provident failed to file a timely answer but did file a motion for extension of time on March 8, 1983. At the March 16, 1983 hearing, counsel for these three (3) defendants made an application to the Court to continue the trial. However, in view of the fact that the defendants' motion for an extension was filed five (5) days late, this application was denied.

Counsel for PGW appeared at the hearing on March 16, 1983, but did not participate in the discussion before the Court. PGW's motion to intervene as a plaintiff was still pending at this time.

Several Orders were entered by this Court as a result of the March 16th hearing. The first Order was entered on March 18th, approving a stipulation agreement between all parties resolving the matter with respect to Provident.[4] Provident was thereby discharged from all liability to the debtor-partnership and other defendants, and was ordered to turn over the funds in Account No. 4707541 to the Clerk of the United States Bankruptcy Court. Second, the plaintiff-debtor applied for a default judgment which was entered on March 24, 1983 against all named defendants except Provident.

The defendants filed a notice of appeal to the United States District Court and a motion for a stay of judgment pending appeal on March 31, 1983. A hearing on the motion for a stay was scheduled for May 25, 1983. Before the hearing on the motion for a stay, however, an Order was entered[5] allowing PGW to intervene as a plaintiff in the adversary proceeding.

Both counsel for PGW and counsel for the debtor argued against a stay at the May 25th hearing. Much of the discussion at this point turned on the fact that counsel for the defendants had failed to designate contents for the record or file a statement of the issues[6] which were required to per-

---

**2.** This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Rules of Bankruptcy Procedure.

**3.** See stipulation dated January 21, 1983 in Adversary No. 83–0087K, approved by Consent Order on January 27, 1983. The debtor also agreed to file a plan of reorganization within twenty-one (21) days of the date of the Consent Order.

**4.** See Order of March 18, 1983 approving stipulation of the parties, legal document no. 9, Adversary No. 83–0303K.

**5.** Although PGW filed a motion to intervene as a plaintiff in the action to compel turnover on March 1, 1983, it was not acted on until May 3, 1983. See legal document no. 21.

**6.** N.T., p. 2, 3.

924

fect the appeal. The Court ordered all counsel to submit briefs on the issue of a stay by June 6, 1983. PGW's memorandum of law opposing a stay was filed by June 6, 1983, in accordance with the Court's instructions. Counsel for the defendants never filed a memorandum of law.

The Honorable Joseph McGlynn, Jr., United States District Court Judge, dismissed the appeal on August 8, 1983, due to the defendants' failure to perfect the appeal. On August 25, 1983, we entered an Order denying the defendants' motion for a stay as moot after it was brought to our attention by counsel for PGW that this motion was still outstanding. The funds were then released by the Bankruptcy Court Clerk to PGW as partial payment of the post-petition debt owed to PGW by the estate.

PGW filed a proof of claim for administrative expenses under section 503(b)(3)(B) and (D) of the Code on July 22, 1983, seeking $3,583.200 for attorney's fees and $266.22 for expenses incurred over the time period from February through May of 1983. The total amount requested is $3,808.22. PGW has never filed a supplemental request for payment of those legal services rendered after May, 1983, although PGW asserts in a memorandum of law [7] subsequently filed that its efforts continued until the matter was resolved in August.

A summary of the basis for PGW's claim was provided in the proof of claim:

"PGW believes that the services rendered by its counsel ... were instrumental in ensuring the success of the Debtor's efforts to compel the turnover of funds, which efforts of PGW thus augmented and preserved the property of the estate. PGW's efforts were also significant in effectuating the Plan of Reorganization of Debtor which relied upon the use of the funds subject to the Action to Compel Turnover." [8]

Schedule II, attached to the proof of claim, is the fee application of Obermayer, Rebmann, Maxwell & Hippel, counsel to PGW, during the time period in question. Schedule III shows the disbursements made by counsel on a month-to-month basis from February to May, 1983.

Counsel for the debtor filed an objection to PGW's request for administrative expenses on August 9, 1983, but withdrew the objection on September 21, 1983, during a hearing on PGW's claim. We reserved decision pending our review of the memorandum of law filed by PGW to support its claim and the fee application of counsel for PGW contained in the proof of claim.

Although there are five (5) subsections of § 503(b)(3), only two (2), subsections (B) and (D), are relevant here. The relevant portions of section 503 provide:

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection incurred by—

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; or

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reim-

---

7. Memorandum of Law In Support of Claim for Compensation of Administrative Expenses by Philadelphia Gas Works, filed September 21, 1983, legal document no. 61.

8. Proof of claim, legal document no. 56, p. 2.

bursement for actual, necessary expenses incurred by such attorney or accountant;

11 U.S.C. § 503(b)(3)(B), (D), (b)(4)

Section 503(b)(3)(B) is derived from sections 64a(1) and (3) of the Bankruptcy Act.[9] Section 64(a) of the Act allowed payment of the costs and expenses of a creditor who, without prior Court authorization, recovered property of the bankrupt for the benefit of the estate. *In the Matter of Casale*, 27 B.R. 69, 70 (Bkrtcy.E.D.N.Y.1983). When this section was recodified within the provisions of § 503(b)(3)(B) of the Code, Congress specifically limited such an allowance to those situations where the creditor sought and obtained prior Court approval to recover the debtor's property on behalf of the estate. *Id.*

Nunc pro tunc authorization was not permitted in *Casale.* There, the Court denied the creditor's request for administrative expenses because prior approval was neither sought nor granted, although the Court commended the creditor's attorney for the exemplary quality of his efforts.

We need not reach the issue of prior Court approval here because we find section 503(b)(3)(B) applicable only to legal proceedings where a creditor's efforts alone resulted in recovery for the estate. We do not believe this section contemplates joint debtor-creditor participation in legal proceedings on behalf of the estate. To do so would encourage unnecessary expenditures for the estate. Therefore, we find section 503(b)(3)(B) inapplicable to the instant situation.

Section 503(b)(3)(D) allows "the actual, necessary expenses ... incurred by a creditor in making a substantial contribution in a case under Chapter 9 or 11 of this title." This section is derived from sections 242[10] and 243[11] of the Bankruptcy Act, relevant to Chapter X cases. *See In re Interstate Stores, Inc.*, 1 B.R. 755 (Bkrtcy.S.D.N.Y. 1980).

Such compensation was not allowed in Chapter XI cases under the Bankruptcy Act. See, e.g., *In re FAS International Inc.*, 382 F.Supp. 77 (S.D.N.Y.1974), aff'd,

**9.** 3 Collier on Bankruptcy, (15th ed. 1979) ¶ 503.04.

**10.** Section 242 provided:

"The judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in connection with the administration of an estate in a proceeding under this chapter or in connection with a plan approved by the judge whether or not accepted by creditors and stockholders or finally confirmed by the judge—

(1) by indenture trustees, depositaries, reorganization managers and committees or representatives of creditors or stockholders;

(2) by any other parties in interest except the Securities and Exchange Commission; and

(3) by the attorneys or agents for any of the foregoing except the Securities and Exchange Commission."

**11.** Section 243 provided:

"The judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred by creditors and stockholders, and the attorneys for any of them, in connection with the submission by them of suggestions for a plan or of proposals in the form of plans, or in con-

nection with objections by them to the confirmation of a plan, or in connection with the administration of the estate. In fixing any such allowances, the judge shall give consideration only to the services which contributed to the plan confirmed or to the refusal of confirmation of a plan, or which were beneficial in the administration of the estate, and to the proper costs and expenses incidental thereto."

*Rule 10–215(c)(B) of the Chapter X Rules described the factors going into the statutory content of Sections 242 and 243 of the 1898 Act. That rule read as follows:*

"(c) *Factors* in Allowing Compensation and Reimbursement of Expenses.

"(B) Reasonable compensation and reimbursement of expenses may be allowed by the court to creditors .... for services which are beneficial in the administration of the estate, for services which contribute to a plan which is approved or to the approval of a plan whether or not such plan is confirmed, for services which contribute to a plan which is confirmed or to the confirmation of a plan, and for services rendered in opposing a plan confirmation of which has been refused. (C) Reimbursement of expenses, including reasonable attorney's fees, incurred by the petitioning creditors may be allowed by the court."

511 F.2d 1164 (2d Cir.1975), cert. denied, 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975).

Collier has stated:

"In short, activities which benefit the estate and the creditors are not to be restricted merely to those which relate to the successful promulgation and confirmation of a plan. Activities relating to opposition to a plan, whether successful or unsuccessful, are entitled, it would appear, to compensation within the meaning of the phrase "substantial contribution. . . ." [12]

Services which substantially contribute to a case are those which *foster and enhance,* rather than retard or interrupt the progress of reorganization. *In re Richton International Corp.,* 15 B.R. 854, 855 (Bkrtcy.S.D.N. Y.1981) (emphasis added).

■ The appropriate test of compensable services is whether they substantially contributed to the successful result. This is so even if the services rendered by counsel are for its client. *Id.,* at 856. However, those services which are provided *solely for the client-as-creditor,* such as services rendered in prosecuting a creditor's claim, are not compensable. *Id.* (emphasis added).

■ The policy aim of authorizing such compensation is to promote *meaningful creditor participation in the reorganization process. Id.* at 856. (emphasis added).

In *Richton, supra,* seven (7) banks, all of whom were creditors of the estate, retained the same counsel. The Court found the banks' counsel, Weil, entitled to compensation under § 503(b)(3)(D) stating:

"From the inception of these cases, Weil has actively participated in virtually every aspect of the reorganization process. . . . Weil aided the securing of intercompany cash advances among the Debtors, facilitated the operation of the Banks as an organized creditors group before the Creditors Committee was appointed, and generally oversaw the relatively smooth, cooperative, and productive progress of these cases. Later in these cases, Weil's efforts to reconcile the debtors and creditors and to negotiate and consummate the reorganization were instrumental in the promulgation of the Plan of Reorganization."

*Id. .at 855.*

■ Here, the debtor filed the adversary proceeding to compel turnover and obtained a default judgment prior to the entry of PGW as a plaintiff in the proceeding. PGW's most significant efforts apparently took place at the District Court level where PGW pursued dismissal of the defendants' appeal, although we have no documentation of legal services rendered after May in the proof of claim. Nevertheless, we are told by PGW in its brief that its counsel pursued "extensive consultations with the Chambers of Judge Joseph McGlynn", and that PGW "shepherded the Motion to Dismiss" the defendants' appeal through Judge McGlynn's Chambers. We have no doubt that counsel's efforts reduced the amount of time involved in having the funds finally released. But, presumably, the dismissal of the appeal would have been forthcoming anyway due to the lack of diligence on the part of defendants' counsel.

In short, we cannot justify a conclusion that PGW made a substantial contribution to the reorganization process. While it is possible that PGW made suggestions which enhanced the debtor's prospects for effectuating a plan of reorganization, this Court is unaware of such information. Nor is any credible connection between the recovery of funds and the reorganization process offered in either the proof of claim documenting the legal services rendered or in PGW's brief. Forebearance from prosecution of a motion to appoint a trustee by a creditor is unpersuasive evidence of the fostering of or enhancement of the reorganization process.

While we commend counsel's assistance to the debtor during prosecution of the adversary action, it appears that counsel's efforts were for the most part calculated to ensure that PGW would recover these funds as soon as possible in satisfaction of its own claim against the estate. The indirect ben-

**12.** 3 Collier on Bankruptcy (15th ed.) ¶ 503.04.

efit which was thereby conferred on the estate does not constitute a substantial contribution to the reorganization process within the meaning of section 503(b)(3)(D). Therefore, PGW's request for the payment of counsel fees as an administrative expense will be denied.