**In re James D. KREIDLE, Debtor.**

**Bankruptcy No. 86–B–05540–M.**

United States Bankruptcy Court,
D. Colorado.

May 9, 1988.

---

Howard Gelt, Berenbaum & Weinshienk, P.C., Denver, Colo., for Creditors Committee.

Roger Barrick, Zimmerman & Schwartz, P.C., Denver, Colo., for Laventhal & Horwath, accountants for debtor.

Kelly Lambert, Denver, Colo., for U.S. Trustee's Office.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Application for Award of Final Compensation filed by Laventhal & Horwath, accountants for the Debtor. Although there were no objections filed by creditors to the Application, the Court was unable to evaluate and independently determine the merits of the Application due to the Court's lack of knowledge or familiarity with the case. Consequently, certain questions were raised and a hearing was held on the Application on April 7, 1988. As requested by the Court, both the Creditors' Committee and the Office of the United States Trustee filed reports on the adequacy and justification of the subject Application. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

■ The Court has reviewed the Application, the Applicant's Supplement to Application, notes from the hearing, the two reports, and the file. The Court has conducted this review under its *obligation* to examine the propriety of fees and expenses even if no one objects. *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 or (Bankr.D. Vermont 1987); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 219 (Bankr.S.D.N.Y. 1986); *In re International Coins and Currency, Inc.*, 26 B.R. 256, 260 (Bankr.D. Vermont 1982). The Court concludes that the fees and costs requested, in the sum of $67,487.00, shall be reduced by the amount of $8,291.00 for the reasons set forth hereinbelow.

1. *Out-of-Pocket Costs.* The sum of $7,480.00 was requested as expenses to be reimbursed by the Debtor's estate. Of that sum, $4,250.00 evidently represents the amount paid by the Applicant to Debtor's regular accountant for his work product, time he incurred for preparing and assembling records and reports, and other similar and related services which were used by, and thus saved time for, Laventhal & Horwath. The balance, $3,230.00, appears to represent the Applicant's:

> [O]ut-of-pocket costs [which] represent Laventhal & Horwath's '... *allocation of overhead* for telephone, photocopying, office supplies, microcomputer recoveries, and other specific costs related to the engagement, including federal express, postage and travel costs.' (Emphasis added.)

The allocation represents an automatic assessment, evidently, of $5.00 per hour (later increased to $6.00 per hour) of professional and para-professional time charged

to the estate. *Significantly, none of the cost items are specified.*

■ The Court firmly believes professionals are entitled to reimbursement of all reasonable out-of-pocket expenses such as long distance telephone charges, postage, special courier services, photocopying, travel expenses, and other similar, necessary expenses which are incurred for a particular client, but which are not expenses necessarily incurred by all clients. *In re S.T. N. Enterprises, Inc., supra* at 844.

■ The costs requested here, however, are not reimbursable as such costs for several reasons. First, they are not itemized or identified. They are, rather, clumped together, as a sort of *surcharge*, apparently based on the number of hours of services performed by professional and para-professional personnel. They are "billed automatically by Laventhal & Horwath's executive office."

Second, they include, evidently, charges for "office supplies" and perhaps other items which are presumably used by all clients and generally constitute overhead costs borne by and included in the customary billing rates used to conduct business. Based on the hourly billing rates of the accountants employed in this case (up to $190.00 per hour), as compared to industry and standard community billing rates, the Court is satisfied the hourly rates charged are quite sufficient to cover general overhead costs of the Applicant.

Third, the $5.00, and then $6.00, surcharge might not represent *actual* costs incurred and, as such, payment of same is absolutely prohibited by the Code and unfair to creditors. "Expenses must be actual, not estimates ... undocumented expenses will not be allowed." *In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557, 584 (Bankr.D.Utah 1985).

Fourth, failure to identify such costs precludes any useful review or meaningful evaluation, by creditors or the Court, as to the need, utility, value and reasonableness of the costs to be reimbursed or the services they represent. *See, Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983).

Consequently, such costs, in the amount of $3,230.00, are denied entirely, unless and until the Applicant supplies as part of its Application a detailed and reliable accounting of actual, necessary costs incurred for this estate and for which payment is requested.

■ 2. *Preparation of Fee Application.* Professionals are, generally, entitled to reasonable fees for reasonable time spent in preparation of fee applications. It is not at all inappropriate to allow fees for such work at standard hourly billing rates, but some reasonable guidelines and limitations may be placed on the size of these fees. *In re Coulter v. State of Tennessee,* 805 F.2d 146, 151 (6th Cir.1986); *See, In re Pettibone Corp.,* 74 B.R. 293, 304 (Bankr. N.D.Ill.1987); *In re Jensen–Farley Pictures, Inc., supra.* The Applicant's request of fees for 65.5 hours in this circumstance appears excessive. This Court is quite familar with fee application preparation and customary billing formats and procedures. The precision, elaboration, form and content of this Applicant's monthly billing statements and the Application for fees are not extraordinary; most certainly they are not extraordinary in a bankruptcy practice. It is impossible for the Court to accurately estimate how long preparation of the routine monthly statements and fee application should have taken in this case, but the unmistakable sense of the Court is that this particular Application and the Applicant's monthly billing statements cannot possibly represent 65.5 hours of work *beyond that customarily spent in routine, necessary billing procedures for other non-bankruptcy clients.*

Beyond that conclusion, however, certain entries indicate extra, unnecessary time was spent in preparing the fee Application. For example, in July, 1987, the amount of $1,297.00 was billed for "[p]reparation of a *revised* fee application based on new guidance provided by counsel." (Emphasis added.) Although the Court is not advised in this particular matter, it is fair to assume that had the initial fee Application been correctly prepared, the revised Application

—and its consequent $1,297.00 cost—would not have been necessary.

The Court will reduce the $5,026.00 requested in this category by 50% or $2,513.00.

■ 3. *"Other Staff" and "Adminis."* *Charges.* Charges of $4,204.00 were claimed for "other staff" and $892.00 for "adminis." costs (presumably administration). "Other staff," the Court is advised, constitutes personnel who performed various:

> [M]inimal tasks of a less significant and complex nature ... such as ... technical research, final assembly of tax returns and the fee application, file organization and maintenance, photocopying, word processing, and deliveries to client and counsel.

Obviously some of these are ministerial tasks. A portion of these fees are eliminated for reasons set forth below.

First, the Court was of the impression from the Applicant, that photocopying and word processing charges, for example, were assessed in the "allocable share," or surcharge category discussed at paragraph one, above. This second charge for the same service appears inconsistent, perhaps contradictory and improper.

Second, labor expenses for "photocopying," "deliveries to client and counsel," and "file organization and maintenance," particularly when such "services" are not identified, itemized or quantified for review, is of dubious validity.

Third, while the Court is again not well advised by the Applicant, it appears that certain of the tasks performed by "staff" are very simple, very easy tasks probably performed (or should have been performed) by unskilled aids, or clerical personnel. This feature of the fees, coupled with no disclosed billing rates, no identification of what the "adminis." designation means, and no distinction of who did "technical research" as opposed to "photocopying," leaves the Court with little foundation to evaluate or approve such payments. *In re Cuisine Magazine, Inc., supra* at 218 and *In re S.T.N. Enterprises, Inc., supra* at

838–839. *See, Ramos v. Lamm, supra; In re Frontier Airlines, Inc.,* 74 B.R. 973 (Bankr.Colo.1987).

The Court will, thus, reduce this portion of the fee request by 50% or by $2,548.00.

The Court infers that between all of the "surcharges" (including "office supplies"), "adminis." costs and "staff" fees, virtually all overhead, or cost of conducting business, is charged directly to the client by, and not incorporated into, the hourly rate charged by professionals and para-professionals. If that is a correct inference, then the hourly billing rates, as compared to and measured by the industry and community standards, should probably be adjusted downward and perhaps substantially so. On the other hand, if that inference is incorrect (and most overhead is *not* directly billed, but part of hourly fee rates), then the "surcharge," "adminis." costs and "staff" fees must be better identified, more closely scrutinized, and more fully justified.

Many customary, routine overhead expenses are not, generally, billable against a debtor's estate. *In re R & B Institutional Sales, Inc.,* 65 B.R. 876, 882–883 (Bankr.W.D.Pa.1986); *In re Seneca Oil,* 65 B.R. 902, 913 (Bankr.W.D.Okla.1986); *In re S.T.N. Enterprises, Inc., supra* at 844.

The Court is simply left, in this case, with too much ambiguity and too many amorphous billing charges; too little worthwhile information to approve these particular costs and fees. While there is a lot of bulk to the Application, there is too little substance. If the subject Application gave a more complete and useful explanation of various charges to which the Court has referred, then certain of the fees reduced, would perhaps, not have been reduced.

IT IS ORDERED that the final compensation requested of $67,487.00 shall be reduced by the sum of $8,291.00 and thus payment of final compensation in the total amount of $59,196.00 shall be paid to the Applicant Laventhal & Horwath.