**In the Matter of TRANSAMERICAN FREIGHT LINES, INC., Debtor.**

**Bankruptcy No. 75–94047–B.**

United States Bankruptcy Court, E.D. Michigan, S.D.

May 14, 1984.

Miller, Canfield, Paddock & Stone by Emmett E. Eagan, Detroit, Mich., for Transamerican Properties, Inc.

Grant, Boigon, Schon & Wise, P.C. by Irving I. Boigon, Southfield, Mich., for Creditors' Committee.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

Transamerican Freight Lines, Inc. (TAFL) hauled freight by truck throughout the United States. On October 10, 1975, TAFL filed a Chapter XI petition. When the petition was filed, the debtor had secured debt of approximately $8,000,000, tax liabilities of approximately $6,000,000, a debt to the Teamsters Health, Welfare and Pension Funds of approximately $1.2 million and unsecured debt of approximately $7,700,000. A receiver was appointed pur-

suant to Section 332 of the Bankruptcy Act, and a creditors' committee was elected to represent unsecured creditors as authorized by Section 338. Both the receiver and the creditors' committee retained counsel pursuant to court order to aid them in carrying out their respective functions. The filing of the Chapter XI gave TAFL the needed time to reorganize. The secured debt was satisfied by the sale of significant segments of its operating rights. TAFL also discontinued a division of its operations which was primarily responsible for the extensive losses that it had incurred and which led to the filing of the Chapter XI. With the extinguishment of the secured debt and the return to profitability, the debtor was in a position to file a plan, which it did on September 10, 1980. The plan provided for the payment of the prepetition priority tax liabilities over a period of eight years and for the payment to unsecured creditors of twelve percent of their debt over a period of six years. The plan as filed was not capable of confirmation since Section 337(2) provided that a plan could not be confirmed unless the debtor deposited sufficient funds to pay the priority debts prior to confirmation, or unless the priority creditors waived such a deposit. However, after extended discussions, the debtor and the taxing agencies agreed upon a payment schedule, and the plan was amended on March 23, 1982 to reflect these agreements. The court scheduled a hearing on confirmation of the plan. However, the debtor requested an adjournment contending that it was necessary to resolve some controversies between the estate and Transamerican Properties, Inc. (Properties) and between Mr. Richard E. Bennett personally and Properties. The controversies were traceable to an agreement entered into between TransAm Investment Company (TransAm) and Properties.

In 1973, Properties, the owner of substantially all of the outstanding common and preferred stock of TAFL, sold the stock to TransAm for $6,000,000. All of the stock of TransAm was owned by Richard Bennett, the Chief Operating Officer of TAFL and by Stanley Auwers. TransAm paid Properties $500,000 at the time of closing and, in addition, transferred the preferred stock of TransAm to Properties. To insure the repayment of the balance due, TransAm gave to Properties a security interest in the operating rights of TAFL. The agreement also granted Properties a lien on all of the common and preferred stock of TAFL and provided that in the event TransAm failed to pay the amounts due Properties, as provided for in the agreement, then Properties would be entitled to elect a new Board of Directors of TransAm, who would remain in office until the purchase price was paid. Since the balance of the $6,000,000 purchase price had not been paid, Properties contended that it had a valid lien on TAFL's operating rights and that it also had the right to elect a new Board of Directors of TransAm, thereby taking control of TAFL from Bennett and Auwers. In addition, Properties contended that it had a priority claim against the estate in the amount of $500,000 for lease payments that the debtor failed to make on terminals it leased from Properties and for damages arising out of the rejection of certain leases. Mr. Robert L. Gotfredson, who controlled Properties, retained counsel early in the proceedings to pursue these claims, which were resisted by the debtor and the receiver. In June or July of 1981, he apparently also retained Emmett E. Eagan as co-counsel. Repeated unsuccessful attempts were made to resolve this controversy.[1] Since the case had been pending for a significant period of time, the court indicated that unless the controversies were resolved by a fixed date, the case would be converted to chapter 7. Faced with the threat of conversion, the parties finally arrived at a settlement. Pursuant to this settlement, the alleged $6,000,000 lien was voided and the lease claims of Properties were settled for $300,000. In addition, Mr. Bennett agreed to

---

1. This controversy should have been settled very early in the proceedings. It ·was not settled primarily because of the antagonism between Mr. Bennett and Mr. Gotfredson.

pay $450,000 for the release of the liens that Properties asserted against the common and preferred stock of TAFL, with $50,000 of the consideration to be paid when the settlement was consummated, and with the remainder to be paid over a period of seven years. The settlement enabled the debtor to proceed with the hearing on confirmation, and a plan was confirmed on May 31, 1983. Mr. Eagan, thereafter, filed an application for compensation in the amount of $75,000 for the services he rendered on behalf of Mr. Gotfredson.[2] The question presented is whether the estate is liable for the legal expenses incurred by Mr. Gotfredson in resolving his controversies with the estate and with Mr. Bennett.[3]

 In Chapter XI cases, the court was authorized to appoint receivers for cause to operate the debtor's business. Section 332, 11 U.S.C. § 732 and Bankr. R.P. 11–18(b).[4] Chapter XI also authorized unsecured creditors to elect a committee of unsecured creditors to protect their interests. Section 338, 11 U.S.C. § 738. The debtor in possession, the receiver and the creditors' committee were entitled to retain attorneys pursuant to court order to the extent necessary to enable them to carry out their respective functions. Bankr.R.P. 215 and 11–22. The compensation allowed to attorneys who were so appointed was accorded priority status as an expense of administration. Section 302, 11 U.S.C. § 702; Section 64(a), 11 U.S.C. § 104(a);

Bankr.R.P. 215. Chapter XI had no provision that authorized the court to award compensation to an attorney for a creditor who asserted claims against the estate. "It is well settled that the bankruptcy court lacks power to grant, and the policy of the Act is against, compensation not expressly provided for by the Act." *Lane v. Haytian Corp.*, 117 F.2d 216, 219 (2d Cir.) *cert. denied*, 313 U.S. 580, 61 S.Ct. 1101, 85 L.Ed. 1537 (1941). Accordingly, only attorneys representing entities who are authorized to retain counsel may be awarded compensation payable from the estate. Since counsel admittedly did not represent the debtor in possession, the receiver, or the creditors' committee, the court has no authority to award compensation to counsel for representing his client in asserting claims against the estate.

Counsel concedes that there is no statutory authority authorizing the court to award compensation to an attorney representing a creditor in a Chapter XI case. He contends, however, that Chapter X authorized the award of compensation to an attorney for a creditor for services rendered that contributed to the formulation of a plan, and that this standard must be applied in this Chapter XI case. There is no merit to this contention.

The failure to authorize the court to award compensation to attorneys for creditors in a Chapter XI case was deliberate and intentional. When Congress intended to compensate attorneys representing enti-

---

**2.** Fee applications have not been filed by co-counsel who represented the creditor.

**3.** Counsel for the creditors' committee filed a memorandum in opposition to Mr. Eagan's claim for compensation from the estate. At the hearing, Mr. Eagan questioned whether the creditor's committee had authorized counsel to oppose his request for compensation. However, whether counsel obtained committee authorization is immaterial, for the court, regardless of objections, must independently determine if an applicant is entitled to compensation. *York International Building, Inc. v. Chaney (In re York International Building, Inc.)*, 527 F.2d 1061 (9th Cir.1975); *see also, In re Detroit International Bridge*, 111 F.2d 235 (6th Cir.1940); *In re Interstate Stores, Inc.*, 437 F.Supp. 14 (S.D.N.Y.1977); *In re Dole Co.*, 244 F.Supp. 751 (D.Me.1965); *In*

*re Kentucky Electric Power Corp.*, 11 F.Supp. 528 (W.D.Ky.1935); *In re Piedmont Development & Investment Corp.*, 3 Bankr.Ct.Dec. (CRR) 97 (Bankr.N.D.Ga.1976); *In re Urban American Development Co.*, 2 Bankr.Ct.Dec. (CRR) 474 (Bankr.S.D.Iowa 1976).

**4.** Section 332 of the Bankruptcy Act provided that "[t]he court may, upon the application of any party in interest, appoint, if necessary, a receiver of the property of the debtor....". Pursuant to this section, some courts appointed a receiver only for cause, others made such appointments routinely. In 1973, the Rules of Bankruptcy Procedure were adopted for Chapter XI. Rule 11–18(b) made it clear that a receiver was to be appointed only for cause. Although the Rule so provided, the Rule did not change existing practice.

ties other than those appointed to represent officers of the estate, it expressly so provided. A comparison of the structure of Chapter XI and Chapter X clearly so demonstrates. Chapter X contemplated that a plan deal with the total debt structure of corporate debtors—secured creditors, unsecured creditors and equity interests. Section 216, 11 U.S.C. § 616. It was the duty of a trustee when appointed to prepare and file a plan. Section 169, 11 U.S.C. § 569. The trustee was also required to "give notice to the creditors and stockholders that they may submit ... suggestions for the formulation of a plan, or proposals in the form of plans." Section 167(6), 11 U.S.C. § 567(6). To encourage meaningful creditor and equity interest participation in a Chapter X case, Section 242 of Chapter X and Rule 10–215(c)(1) provided that the judge may allow reasonable compensation for services rendered by attorneys for creditors or for stockholders "in connection with the administration of an estate ... or in connection with a plan approved by the judge." Section 242, 11 U.S.C. § 642. *See also, In re Interstate Stores, Inc.,* 1 B.R. 755 (Bkrtcy.S.D.N.Y.1980). Chapter XI contains no comparable statutory provision or rule; and for good reason. Unlike Chapter X, only the Chapter XI debtor could propose a plan, Section 323, 11 U.S.C. § 723, and the plan could only deal with unsecured debt. Section 306(1), 11 U.S.C. § 706(1). No need existed, therefore, to provide compensation for attorneys other than those attorneys who represented the debtor in possession, receiver, or a creditors' committee. To the extent that counsel relies upon Section 242 of Chapter X and Rule 10–215(c)(1) as a basis for justifying an award of compensation to him, such reliance is misplaced. *In re Fas International, Inc.,* 382 F.Supp. 77 (D.S.D.N.Y. 1974) *aff'd,* 511 F.2d 1164 (2d Cir.1975).

The Bankruptcy Code enacted in 1978 does allow, as counsel observes, as an administrative expense the actual and necessary expenses of a creditor who makes "a substantial contribution in a case under chapter 9 or 11." 11 U.S.C. § 503(b)(3)(D). However, this section is applicable only to cases filed after September 30, 1979. Pub.L. No. 95–598, Title IV, § 403(a), 92 Stat. 2683 (codified at 11 U.S.C. preceding § 101) (1979). The substantive rights of parties with respect to cases commenced prior to October 1, 1979 are covered by the Bankruptcy Act and not by the Code. *Id.*

Moreover, even if this were a Chapter X proceeding, or a Code case, the services rendered by counsel for his client would not be compensable as an expense of administration. While Section 242 and Rule 10–215(c)(1) authorized the payment of compensation to entities who otherwise would not have been able to apply for compensation, they were not enacted "to provide for compensation to creditors for their efforts in merely pursing [sic] their own self-interests where no resulting benefit to the plan or estate can be found." *In re Interstate Stores, Inc.,* 1 B.R. at 757. The Chapter XI plan filed was the essence of simplicity. The plan was filed in September of 1980—more than a year before counsel was retained by the creditor. Counsel was not involved in formulating a plan for the debtor, nor did he contribute to the plan that was confirmed. He represented a creditor with interests adverse to the estate and in a controversy with the principal stockholder of the debtor. These claims had to be resolved prior to confirmation of a plan. In every Chapter XI, as in this case, many claims are asserted against the estate by creditors—claims which may have to be resolved before a plan can be confirmed. It does not, however, justify the payment of the legal fees incurred by such creditors. Such services are not beneficial to the estate, nor are they services rendered in connection with the formulation of a plan. If the position of counsel were adopted, every creditor who asserted a claim against the estate, if the claim were settled or successfully prosecuted, could burden the estate with costs and expenses incurred by the creditor. It would be a curious doctrine that would permit a creditor to burden the estate for expenses incurred by his efforts to dismember it. The settlement was not a magnanimous gesture

by Mr. Gotfredson. He did not settle his claim with the estate because of concern for other creditors. He was interested solely in obtaining the best possible deal for himself. Nothing in Chapter XI or its underlying policy considerations remotely suggests that a struggling debtor is to be saddled with the legal expense of individual creditors who pursue personal interests adverse to the estate.

■ There is even less reason for recognizing the claim of counsel for services rendered in connection with the resolution of the conflict concerning the stock ownership interests of Gotfredson and Bennett in the Transamerican Properties. This was a controversy personal to the litigants. The resolution of this conflict would merely determine who would control the destiny of the debtor. The controversy did not relate to or involve property of the estate. An attorney representing an estate may be compensated only for services rendered to or for the benefit of the estate. *Conrad, Rubin & Lesser v. Pender*, 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327 (1933); *In re Evenrod Perfumer, Inc.*, 67 F.2d 878 (2d Cir. 1933).

While an attorney's association with other parties in interest does not necessarily prevent his appointment as counsel for the estate, yet it may cause him to suffer a reduction of his compensation out of the estate on the ground that certain services are considered to have been rendered for the benefit of his private clients rather than for the estate. 3A *Collier on Bankruptcy* ¶ 62.12 at 1467 (14th ed. 1975). The Sixth Circuit in *Cle-Ware Industries, Inc. v. Sokolsky*, (*In re Cle-Ware Industries, Inc.*), 493 F.2d 863, 873 (6th Cir.1974), adopted the comment from *Collier* and additionally stated: "It is clear that attorneys entitled to fees for services in bankruptcy and Chapter XI proceedings will have their fees reduced proportionately where their services were partly performed on behalf of private clients." To the extent that the attorney for the debtor performed services for Mr. Bennett personally, he is not entitled to compensation from the estate for such services. The estate is no more liable for the costs and expenses incurred by Mr. Gotfredson in pursuing his claim against Mr. Bennett, than for the costs and expenses incurred by Mr. Bennett in resolving his personal controversy with Mr. Gotfredson.

Properties and Mr. Gorfredson who controlled Properties received $750,000 pursuant to the settlement negotiated by Mr. Eagan. Properties and not the estate should be responsible for the legal fees that Properties incurred in negotiating the settlement.

An order consistent with this opinion will be entered.