Elaine J. VAUDREUIL, Appellant,

v.

Lewis J. BUSCONI, Appellee.

Civ. A. No. 92–40167–NMG.

United States District Court,
D. Massachusetts.

June 8, 1995.

Susanne R. Blatt, Cosgrove, O'Connell & Blatt, Worcester, MA, for appellant.

Bruce F. Smith, Jager, Smith & Stetler, Boston, MA, for appellee.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court is a motion by appellant, Elaine J. Vaudreuil, to vacate the order of summary judgment entered by the Bankruptcy Court in favor of appellee, Lewis J. Busconi.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On May 9, 1981, Ms. Vaudreuil ("the Wife") and Mr. Busconi ("the Husband") entered into an ante-nuptial agreement which provided that if they divorced, the Wife would receive 1) the couple's home in Southboro, MA, valued at $750,000, 2) $250,000 in cash, and 3) $40,000 per year (in pro rata weekly installments) for the rest of her life, adjusted for the cost of living. The parties filed for divorce on September 16, 1987, and the Husband sought to enforce the ante-

nuptial agreement over the Wife's objections. The Massachusetts Probate Court found the agreement to be reasonable, and incorporated its provisions in the divorce decree issued on June 11, 1990.

On February 7, 1991, the Husband filed for bankruptcy protection and, in subsequent bankruptcy proceedings, asserted that the "alimony" payments to the Wife constituted a property settlement in the divorce, and were, therefore, dischargeable. The Wife contended that these payments were meant for her support, and that the Husband's debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(5). The Bankruptcy Court entered summary judgment for the Husband concluding that the payments constituted a property distribution and that the debt was dischargeable.

In the pending appeal, the Wife argues that summary judgment for the Husband was entered improperly, particularly because the Bankruptcy Court did not construe the factual record in the light most favorable to the non-prevailing party. The Wife moves this Court to find that the Bankruptcy Court erred in denying her motion for summary judgment and to enter summary judgment in her favor, or, in the alternative, to remand the case to the Bankruptcy Court for a determination of a genuine issue of material fact, namely whether the parties intended the "alimony" payments to be for the Wife's support.

## II. STANDARD OF REVIEW

The District Court must review the Bankruptcy Court's order of summary judgment *de novo*. *In re Varrasso*, 37 F.3d 760, 763 (1st Cir.1994). In bankruptcy proceedings, summary judgment is governed by Bankruptcy Rule 7056 which incorporates the standards of Fed.R.Civ.P. 56. Pursuant to these rules, a motion for summary judgment should be allowed only when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law.

In considering the record on a motion for summary judgment, the Court must view the facts and draw inferences in the light most favorable to the nonmoving party, the Wife. *See, e.g. Morris v. Government Dev. Bank,*

27 F.3d 746, 748 (1st Cir.1994). Summary judgment must be denied, therefore, if inferences necessary to the judgment are not mandated by the record. *See Blanchard v. Peerless Ins. Co.,* 958 F.2d 483, 488 (1st Cir.1992) (warning that summary judgment is precluded "unless no reasonable trier of fact could draw any other inference from the 'totality of the circumstances' revealed by the undisputed evidence").

## III. THE LEGAL STANDARD FOR DISCHARGEABILITY

Section 523(a)(5) of the Bankruptcy Code excepts from discharge a debt "to a ... former spouse ... for alimony to, maintenance for, or support of such spouse ..., in connection with a ... divorce decree." 11 U.S.C. § 523(a)(5). A debt will be excepted from discharge only if it actually is "in the nature of alimony, maintenance or support," and not simply if it is labeled as such. Whether a debt constitutes alimony or a property distribution is determined under bankruptcy law, and not under state law.

In determining whether a support obligation exists, some courts consider a list of factors, including:

1) the intention of the parties at the time the agreement was formed;

2) the intention of the state court in issuing the order;

3) the age and health of the parties;

4) the work skills of the parties;

5) whether the obligation terminates upon remarriage or death;

6) the respective financial resources of the parties;

7) the duration of the marriage; and

8) the standard of living during the marriage.

*See, e.g., Stone v. Stone (In re Stone),* 79 B.R. 633 (Bankr.D.Md.1987).

The primary focus, however, is on the intent of the parties in making an agreement and the intent of the state court in making an award. *Yeates v. Yeates (In re Yeates),* 807 F.2d 874, 878 (10th Cir.1986). If the agreement is ambiguous, extrinsic evi-

dence concerning the intent of the parties should be considered.

One Court has observed:

> The Bankruptcy Code requires the bankruptcy court ... to determine the true nature of the debt, regardless of the characterization placed on it by the parties' agreement or the state court proceeding. The bankruptcy court may, therefore, consider extrinsic evidence to determine the real nature of the underlying obligation in order to determine its dischargeability. [The Court should consider many of the factors listed above.] These [factors] are not legal criteria, as they are characterized by the parties, but relevant evidentiary factors that assist the bankruptcy court as trier of fact in determining the true nature of the debt created by the agreement.

*Matter of Benich,* 811 F.2d 943, 945 (5th Cir.1987).

■ The determination of the true intent of the parties, therefore, is a question of fact. In general, this Court reviews findings of fact made by the Bankruptcy Court under the "clearly erroneous" standard. In the present case, however, the Bankruptcy Court granted a motion for summary judgment. Therefore, any factual inferences drawn by that Court must be reviewed *de novo.* Furthermore, the determination by the Bankruptcy Court that there are no genuine issues of material fact in this case also must be reviewed *de novo.*

## IV. DISCUSSION

Upon reviewing the summary judgment record, this Court concludes that the Bankruptcy Court did not view that record in the light most favorable to the Wife. Because the complete record indicates that there is a genuine issue of material fact with respect to whether the "alimony" payments are for the Wife's maintenance and support or are a substitute for a lump sum property settlement, summary judgment is inappropriate and the decision of the Bankruptcy Court will be vacated.

## A. *The Bankruptcy Court's Findings*

The Bankruptcy Court made the following "findings of fact." The Husband is sixty-seven years old and the Wife is fifty years old. They met in 1975, and soon thereafter the Husband moved into the Wife's home. In 1976, the Husband purchased a home in Southboro where the parties lived with the Wife's two minor children by another marriage. Although the Wife had the ability to support herself, the Husband supported the entire household.

In 1980, the parties separated for a short time due to a dispute regarding whether they would be married. The Husband insisted that they execute an ante-nuptial agreement and the Wife consented. On May 9, 1981, the parties signed the agreement at issue, and they were married the following day. The agreement provides that in the event of a divorce, the Wife would receive: 1) the Southboro property, with its furniture and fixtures, mortgage free, 2) $250,000 in cash, and 3) "alimony" totalling $40,000 per year, subject to a cost of living adjustment upward in following years. The "alimony" payments were to continue until the death of either party, regardless of whether the Wife remarried.

The Husband contends, and the Bankruptcy Court found, that the parties arrived at their agreement because the Husband wished to avoid liquidating his real estate holdings (which in 1981 were vast) in the event of a divorce. The Court found that the Husband agreed to make life long payments to the Wife in exchange for her agreeing not to seek any further property settlement from his estate. The Court further found that the parties decided to label those monthly payments as "alimony" for tax purposes, i.e. so that they would be tax deductible to the Husband. The Court found that the Wife was amenable to this arrangement.

In order to make findings with respect to the parties' intent as to the "alimony" payments, the Court relied, in part, on an affidavit prepared by the Husband for the purposes of his motion. The Court also noted that the Wife did not file a counter-affidavit disputing the Husband's contention that the

payments were labeled "alimony" for tax purposes.

The Bankruptcy Court further found that the parties did not negotiate the sum of the monthly payments based upon the Wife's needs or the parties' respective resources. That finding was, again, based upon assertions in the Husband's affidavit. The fact that payments were to continue even if the Wife remarried also indicated to the Bankruptcy Court that the payments were, in fact, a property distribution.

Apparently, the Bankruptcy Court was particularly persuaded that the payments are a substitute for a property settlement because it found, and the record adequately supports the conclusion, that the Wife is a sophisticated and successful businesswoman who had real estate holdings of her own in the 1980's. The Bankruptcy Court concluded that because the Wife was fully capable of supporting herself, the "alimony" payments were not for her support and maintenance, but were consideration for her agreement to yield her right to a property distribution in the event of a divorce.

### B. *Evidence of a Genuine Issue of Material Fact*

■ There are several factors in the summary judgment record which indicate that there is a genuine issue of material fact as to whether the parties intended the "alimony" payments to be a substitute for a lump sum property distribution. Those factors cast doubt on the Bankruptcy Court's determination that no reasonable factfinder could find to the contrary.

**1. The Probate Court findings.** The Probate Court, in finding the ante-nuptial agreement to be reasonable, was required to make findings regarding the execution of the agreement and the fairness of its terms, both at the time of its execution in 1981 and at the time of the divorce in 1987. The Probate Court states in its Findings of Fact:

> The defendant [Busconi] asked the plaintiff [Vaudreuil] what she wanted. She stated that she wanted a home, alimony which would continue even upon her remarriage and to be maintained in the style in which she had become accustomed. The plaintiff

asked for $38,000.00 to $40,000.00 annul [sic] alimony. The defendant originally offered $30,000.00 but then agreed to plaintiff's request, including her demand that it continue even if she remarried. The defendant told the plaintiff he did not think it would be fair for him to pay more.

Construing the record in the light most favorable to the appellant, Ms. Vaudreuil, that finding implies that the Probate Court was persuaded that the "alimony" payments were for her maintenance and support.

**2. Both the Wife and the Husband have treated the payments as alimony for tax purposes.** While the Bankruptcy Court has interpreted the tax treatment of the payments as support for the Husband's claim that the transaction was simply structured that way for his tax benefit, the Wife contends that those same facts just as reasonably indicate that the payments were intended for her maintenance and support.

**3. The Husband supported the Wife for several years.** Despite the fact that the Wife worked throughout the relationship, the Husband supported her and her children before and during the marriage. At the time the ante-nuptial agreement was signed in 1981, the parties had lived together for over five years, and the Husband had been responsible for the support of the family up to that point. The Wife contends that the ante-nuptial agreement was intended to afford her with continued support of $40,000 per year in the event of a divorce so as to maintain her in the manner to which she had been accustomed.

**4. The payments represent a relatively modest sum which is likely to contribute to the Wife's support.** While the parties may not have calculated the annual payment of $40,000 on the basis of the Wife's expenses or needs, that amount is the equivalent of a modest yearly income.

**5. The debt is structured to resemble support payments.** The "alimony" payments are disbursed in weekly installments and adjusted for the cost of living.

**6. The Husband is obligated to make the "alimony" payments even if the Wife**

remarries. The Wife contends that the continuation of the payments after her remarriage does not mean such payments are a property settlement because Flora Busconi, the Husband's first's wife, is also entitled, under an earlier divorce decree, to receive alimony payments upon remarriage, and those payments are most assuredly for the first wife's support.

7. **The "alimony" payments will cease upon the death of either the Wife or the Husband.** The Wife contends that the fact that payments are to discontinue upon death supports her argument that the payments are for her support and not a property distribution which would more likely have been indicated by a continuing obligation to the Wife's estate or by the Husband's estate.

8. **The Probate Court reduced the Husband's weekly payments to both of his former wives because of the bankruptcy.** Under Massachusetts law, only support and maintenance may be modified after entry of judgment, while a division of marital property is final pursuant to M.G.L. c. 208 § 37.

## V. CONCLUSION

Reviewing the summary judgment record in the light most favorable to the appellant, Ms. Vaudreuil, this Court concludes that there is a genuine issue of material fact, to wit, what is the true purpose and nature of the "alimony" payments owed by the Husband to the Wife. Consequently, the summary judgment entered in favor of the Husband, Mr. Busconi, will be vacated, and the case will be remanded to the Bankruptcy Court for further proceedings.

### ORDER

For the foregoing reasons, the order by the Bankruptcy Court allowing the motion for summary judgment of the appellee, Lewis J. Busconi, is VACATED. The case is remanded to the Bankruptcy Court for a decision on the merits of the case.

SO ORDERED.