**In re BOLTON–EMERSON, INC., Debtor.**

**Civil Action No. 95–11466–PBS.**

United States District Court,
D. Massachusetts.

Sept. 17, 1996.

Bernard J. Bonn, III, Dechert, Price & Rhoads, Boston, MA, for Appellant.

Peter J. Haley, Gordon & Wise, Boston, MA, for Appellee.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

The law firm of Asoian, Tully & Gilman and attorney Arthur J. McCabe, II (collectively "AT & G") applied. for compensation from the bankruptcy estate of Bolton–Emerson, Inc., for its defense of the debtor and two of its corporate officers in state litigation involving misrepresentations made by the officers. *In re Bolton–Emerson, Inc.,* Chapter 11 Case No. 89–13363–WCH. The bankruptcy court allowed compensation in full despite the objection of the Standard Register Company, the successful plaintiff in the state litigation and a judgment creditor of the debtor.

On appeal, Standard Register argues (1) that AT & G was never properly appointed by the bankruptcy court, (2) that AT & G failed to disclose to the court the conflict of interest inherent in its representation of both the corporation and the individual co-defendant officers, and (3) that AT & G should not receive compensation for work that benefitted the individual officers.

Because the record on appeal fails to show that AT & G was validly appointed to represent the debtor in the Standard Register litigation, the award of compensation must therefore be reversed. However, the case will be remanded to the bankruptcy court for determination in its discretion as to whether *nunc pro tunc* appointment and compensation are appropriate. The judgment of the bankruptcy court is ***REVERSED*** and the action ***REMANDED*** for further proceedings in accordance with this opinion.

## FACTUAL BACKGROUND

Bolton–Emerson, Inc. ("Bolton"), a Massachusetts corporation, entered bankruptcy proceedings in 1989. At all relevant times, John W. Fitzgerald ("Fitzgerald") was the President, Chief Executive Officer, and eighty-percent majority shareholder of Bolton. Glen I. Urquhart ("Urquhart") was Bolton's vice president of sales and marketing, and a five-percent shareholder. Three others owned shares in the company.

### 1. State court proceedings

In March 1988, despite a deteriorating financial condition, Bolton entered into a contract to manufacture a hot melt coater for the Standard Register Company ("Standard Register"). Standard Register informed Bolton that delivery by September 1, 1998, was critical to coincide with a move to a new production facility. Fitzgerald and Urquhart assured Standard Register that the coater would be delivered by September.

At the time they entered into the contract, Fitzgerald and Urquhart knew that Bolton could not afford to buy the component parts of the coater, but they failed to inform Standard Register of Bolton's financial problems. After the original delivery date passed, Fitzgerald and Urquhart promised delivery dates in the near future that they knew to be impossible. When Standard Register threatened to cancel the order, Fitzgerald and Urquhart falsely stated that there had been problems with suppliers and personnel but that all problems had been resolved. Thus, while Fitzgerald and Urquhart continuously reassured Standard Register that they were making progress, Bolton never actually commenced the manufacture of the coater.

Standard Register filed suit against Bolton, Fitzgerald, and Urquhart in Essex Superior Court on September 6, 1989. In August 1991, the Essex Superior Court found Bolton, Fitzgerald, and Urquhart liable for breach of contract and violations of Mass.Gen.L. Chapter 93A. The court entered judgment against the defendants jointly and severally in the amount of $1,954,073.38, and entered separate judgments against Fitzgerald and Urquhart individually, each in the amount of $1,163,737.00. The judgment totalled $5,445,284.38.

All three defendants appealed the award of lost profits as precluded by the limitation of liability provisions in the contract. Additionally, Fitzgerald and Urquhart appealed the assessment of lost profits against them as individuals, arguing that only the corporation should have been liable for breach of contract. The judgment of the superior court was affirmed in full. *See Standard Register v. Bolton–Emerson, Inc.,* 38 Mass.App. 545, 649 N.E.2d 791 (1995).

### 2. Bankruptcy proceedings

While Standard Register's suit was pending against Bolton in the Superior Court, Bolton went into bankruptcy. On November 3, 1989, Bolton went into involuntary Chapter 7 bankruptcy; on December 5, 1989, it filed a voluntary petition under Chapter 11. This appeal involves the legal representation of the bankrupt estate in the defense of Standard Register's suit, and the award of attorney's fees.

On February 20, 1990, Bolton moved for the appointment of Asoian, Tully and Gilman ("AT & G") as special litigation counsel for four specified purposes. This appointment was approved on March 21, 1990, only with respect to one item, the "[c]ontinued representation of debtor as plaintiff in *Bolton Emerson v. Upton Industries* (product liability claim for defective furnace); *Bolton Emerson v. Midwest Packaging* (collection of $80,000 receivable) and various collection actions." Thus the appointment was approved for representation of Bolton as a plaintiff in collection actions.

AT & G never formally requested appointment with respect to the defense of the Standard Register litigation. AT & G claims that when the automatic stay was lifted, it was clear to the bankruptcy court and all parties that AT & G would continue to represent all three defendants in its role as special counsel. As far as the Bankruptcy Court docket indicates, however, such representation was never approved by the Court. Nevertheless, from May 1991 until February 1992, AT & G represented Bolton, Fitzgerald, and Urquhart in the Standard Register litigation. Af-

ter February 1992, AT & G represented only Bolton. The work for Fitzgerald's and Urquhart's separate appeal was performed by another attorney.

In August 1994, AT & G filed an application in the bankruptcy court for the reimbursement of fees and expenses incurred in the Standard Register litigation. The court approved the petition without opposition. Of the $66,771.27 awarded in fees and expenses, $53,632.92 were incurred between May 1991 and February 1992, when AT & G was representing Bolton's corporate officers as well as the corporation itself; $13,138.35 were incurred after February 1992; when AT & G represented only Bolton.[1]

On February 7, 1994, Standard Register filed a motion for reconsideration of the fee award, claiming that it never received notice of AT & G's fee application, and arguing that AT & G should not have received compensation for its representation of Fitzgerald and Urquhart as individuals. Standard Register assumed that AT & G had been appointed as special litigation counsel to Bolton, and argued only that it was never appointed to represent, and could not be compensated for representing, the individual defendants. The court raised sua sponte the question whether a conflict of interest resulted from the simultaneous representation of the corporation and its officers. After extensive briefing and argument, however, the motion for reconsideration was denied for the "reason[s] contained in [Bolton's] opposition to the motion." This appeal followed.

### DISCUSSION

### STANDARD OF REVIEW

A district court must accept the findings of fact by a bankruptcy court unless those findings are clearly erroneous, and "due regard must be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Fed.R.Bankr.P. 8013. *See also In re Burgess,* 955 F.2d 134, 137 (1st Cir. 1992). Conclusions of law, however, are reviewed *de novo.* *In re LaRoche,* 969 F.2d 1299, 1301 (1st Cir.1992).

1. *Standards for appointment and compensation of counsel*

■ Pursuant to 11 U.S.C. § 327(e), a bankruptcy trustee "with the court's approval, may employ, for a specified purpose, ... an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." These requirements are intended to "ensure impartiality in bankruptcy proceedings." *Electro–Wire Prods, Inc. v. Sirote & Permutt, P.C. (In re Prince),* 40 F.3d 356, 360 (11th Cir.1994).

■ After notice and hearing, the court may award to a properly appointed attorney "reasonable compensation for actual, necessary services rendered by such ... attorney" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a). The attorney seeking compensation "bears the burden of establishing the facts necessary to the award of fees and costs requested under Section 330 and 331." *In re By–Rite Oil Co.,* 87 B.R. 905, 914 (Bankr.E.D.Mich.1988).

■ "Compensation of debtors' counsel is closely scrutinized because of the temptation of a failing debtor to deal too liberally with his property in employing counsel, and because transactions with debtor's attorney provide potential for evasion of creditor protection provisions of bankruptcy laws and overreaching by the debtor's attorney." *In re Whitman,* 51 B.R. 502, 506 (Bankr. D.Mass.1985). Accordingly, "the Court may deny allowance of compensation for services and reimbursement of expenses of a professional person" if the person is not disinterested or holds an interest adverse to the interest of the estate "with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c); *see also In re The Lighting Center,* 178 B.R. 320, 324–25 (Bankr.D.R.I.1995). Courts have defined "adverse interest" to include serving as an

---

1. AT & G's application for fees stated that the full $66,771.27 was for representation of the Debtor between May 1992 and June 1994. AT & G admits that these dates were wrong in the application, and states that the error was a clerical one.

**730**

attorney for a person possessing an economic interest "that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant" or that would create a predisposition against the estate. *Electro–Wire Prods.*, 40 F.3d at 356 (internal quotations omitted).

### 2. *Appointment as special counsel*

 A valid appointment under Section 327 is a condition precedent to the decision to grant or deny compensation under Section 330(a) or 328(c). *In re CIC Investment Corp.*, 192 B.R. 549, 553 (9th Cir. BAP 1996) (citing *Michel v. Federated Dept. Stores, Inc. (In re Federated Dept. Stores, Inc.)*, 44 F.3d 1310 (6th Cir.1995)); *see also* Fed.R.Bankr.P. 2014 (procedure for the appointment of professional persons). The first question, then, is whether AT & G was ever appointed by the bankruptcy court to act as special counsel in the Standard Register litigation.

AT & G has represented in its pleadings that Bolton formally requested AT & G's appointment as special counsel, and that the appointment was approved by court order. The firm failed to explain in any pleading that Bolton never actually requested appointment for the Standard Register litigation, or that the court-approved appointment was specifically limited to representation of the debtor as a plaintiff in several collection actions. Nevertheless, AT & G cited the order as proof of its appointment as special counsel when seeking compensation for defending the Standard Register litigation. Standard Register accepted AT & G's representations that it had been appointed by order of the court until it actually reviewed the order in the process of preparing its reply brief on appeal.

Now AT & G argues, in essence, that it was appointed by common understanding during the proceedings leading up to the lifting of the automatic stay with respect to the Standard Register litigation. *See* Dkt. 7 at 2 ("[I]t was clear to the Court and all

parties that AT & G was representing all three defendants in the state court action and would continue to do so in its role as special counsel."). However, there is no record evidence of the bankruptcy court's approval of AT & G's representation of Bolton in the Standard Register litigation. This Court of course has no independent knowledge of the proceedings below, and cannot rely upon facts not reflected in the record.

 AT & G complains that Standard Register failed to challenge the appointment at the time the stay was lifted. However, it was not Standard Register's burden to ensure that AT & G obtained the court's permission to act as special counsel. *See In re Bear Lake West, Inc.*, 32 B.R. 272, 278 (Bankr.D.Idaho 1983) ("Not only must counsel apply for approval of employment under § 327, they must assure themselves that such approval has been granted prior to undertaking representation...."). Next, AT & G argues that this issue was not included in Standard Register's Notice of Appeal. Yet the issue as presented encompasses this argument. *See* Dkt. 17 ("Did the Bankruptcy Court err in approving the fee application of AT & G, in denying Standard Register's motion to reconsider the fee application of AT & G, and in failing to articulate the basis for its denial of Standard Register's motion for reconsideration?").

 AT & G also argues that Standard Register waived the argument of improper appointment for purposes of this appeal by failing to make it in front of the Bankruptcy Court. Although Standard Register could have discovered the lack of a formal appointment sooner by checking the court docket, waiver is not appropriate in this instance. First, as indicated above, AT & G's description of the circumstances of its appointment in its fee application had a salient omission, and was therefore misleading.[2] Second, "the bankruptcy court has the obligation to review requests for counsel fees in the absence of any objection." *In re Inslaw, Inc.*, 106 B.R. 331, 333 (Bankr.D.D.C.1989).

2. The application states that the Court "approved counsel's application for the firm to act as special litigation counsel to the debtor." (Docket

184). The record is inadequate for a determination as to whether the material omission arose intentionally or negligently.

The award of fees must therefore be reversed for lack of any record evidence of a valid appointment. Because it is the applicant's burden to support its claim to compensation, *In re By–Rite Oil,* 87 B.R. at 914, this could be the end of the matter. However, although I have held that Standard Register's failure to raise the issue below did not effect a waiver, the fact that this issue was raised so late in the game has denied AT & G the opportunity to prove a valid appointment in the appropriate forum, the bankruptcy court. The Court will therefore remand to the bankruptcy court for further proceedings.

### 3. *Nunc pro tunc appointment*

 In limited circumstances, "[a] bankruptcy court may, in its discretion, consider an application to approve the employment of a professional even though the professional persons' services have already been rendered." *In re Jarvis,* 53 F.3d 416, 422 (1st Cir.1995). However, the court should grant such authorization if it can be shown that the professional person meets all the statutory requirements and that "the untimeliness of the application results from extraordinary circumstances." *Id.* Thus, if the court in its discretion would not have approved the application due to an adverse interest, nunc pro tunc appointment would be inappropriate as well. Moreover, generally speaking, mere oversight does not constitute an extraordinary circumstance justifying post facto authorization of employment. *See id.* at 421.

On remand, then, the bankruptcy judge may also consider whether to entertain a motion from AT & G for nunc pro tunc appointment. *See id.* at 420 (bankruptcy court's power to grant or deny such applications is discretionary). If the bankruptcy judge decides that no prior appointment was effected and the extraordinary nunc pro tunc appointment is unjustified, AT & G must be denied compensation.

### 4. *Failure to disclose potential conflict*

 Standard Register also argues that AT & G had a duty to disclose to the court the potential conflict of interest inherent in its simultaneous representation of Bolton and its individual officers. The "Bankruptcy Code imposes particularly rigorous conflict-of-interest restraints upon the employment of professional persons in a bankruptcy case." *Rome v. Braunstein,* 19 F.3d 54, 57 (1st Cir.1994). At a minimum, full disclosure and a court ruling are required once counsel is aware of an actual *or potential* conflict. *Rome,* 19 F.3d at 59 ("Absent the spontaneous, timely and complete disclosure required by section 327(a) and Fed. R.Bankr.P. 2014(a), court-appointed counsel proceed at their own risk."); *In re Whitman,* 51 B.R. 502, 507 (Bankr.D.Mass.1985) ("It is the duty of the attorney to reveal all connections, and if he neglects to make proper disclosure, he performs services at his peril."). The failure to disclose facts material to a potential conflict provides sufficient grounds for the denial of all compensation. *Rome,* 19 F.3d at 58–60 (court may deny all compensation to an attorney as a " 'penalty' for failing to avoid a disqualifying conflict of interest").

 On the other hand, "where the equities outweigh the need for attorney discipline for failure to disclose potential conflicts, the law does not require the denial of fees and costs." *In re Roberts,* 75 B.R. 402, 412 (D.Ut.1987); *Rome,* 19 F.3d at 62 ("[W]e adopt no per se or brightline rule invariably requiring denial of all compensation under section 328(c)."); *Lighting Center,* 178 B.R. at 325 (denying compensation only for the services that suggested conflict of interest, viewing the total denial of compensation as too severe under the circumstances).

Several courts have flagged the potential conflict of interest which arises when counsel represent both a corporate debtor and its officers. *Cf. In re Baldwin–United Corp.,* 45 B.R. 378, 379–80 (Bankr.S.D.Ohio 1983) (rejecting application of law firm to represent nonmanagement directors of debtor as well as debtor itself in securities litigation because, although their interests coincided, it was within the realm of possibility that they would not always coincide); *In re American Printers & Lithographers, Inc.,* 148 B.R. 862, 865 (Bankr.N.D.Ill.1992) (noting that "[s]everal courts have refused to allow attorneys to

represent a debtor while simultaneously representing a principal of that debtor" even in unrelated matters, and citing cases); *In re FSC Corp.*, 33 B.R. 212, 213–14 (Bankr. W.D.Pa.1983) (noting that the "potential for conflict of interest may arise when counsel represents both a corporate debtor and its officers").

In fact, an actual conflict eventually developed in the Standard Register litigation, albeit not while AT & G represented the individual defendants. The parties' interests diverged at the appellate level, where Fitzgerald and Urquhart argued that only the corporation should have been liable for lost profits. In addition, there was always a potential for conflict of interest in deciding whether Bolton should have attempted to place the blame on Fitzgerald and Urquhart.

■ AT & G responds that the conflict was avoided because all parties agreed upon a joint defense. This is a dodge, as the disclosure requirement exists so that this determination may be made in advance of a potential conflict by the court. *Rome*, 19 F.3d at 59 n. 3 ("In no event, however, may counsel presume dispensation from the full disclosure" required by Section 327.). *Cf. In re Glenn Elec. Sales Corp.*, 99 B.R. 596, 599 (D.N.J.1988) (reviewing court has no duty to search the file to determine for itself that prospective attorney is not involved in actual or potential conflicts of interest).

■ AT & G also argues that cases like *Rome* involving the appointment of general counsel pursuant to § 327(a)—which has a "disinterestedness" requirement as well as a "no interest adverse to the estate" statutory requirement—are inapposite because it was appointed as special litigation counsel pursuant to § 327(e). Section 327(e) itself permits appointment only "if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e). Although § 327(a) lacks the disinterestedness requirement, the Court must examine conflict of interest principles in determining whether multi-party representation creates an "ad-

verse interest" under Section 327(e). *See In re American Avia Assoc.*, 150 B.R. 24, 27 (Bankr.S.D.Tex.1992) (permitting multiple party representation where the parties' positions were not incompatible). The "important policy" articulated in *Rome* that all professionals appointed by the Bankruptcy Court "tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities" should not hinge on whether the appointment is pursuant to section 327(a) or (e). *Rome*, 19 F.3d at 58.

AT & G breached its duty to bring this potential for conflict to the attention of the court by failing to disclose that the firm also represented Fitzgerald and Urquhart in their individual capacities. However, the Court did consider the serious conflict of interest issue sua sponte, and after briefing, apparently determined no conflict existed. Although Standard Register argues that the estate could have argued that Fitzgerald and Urquhart's actions were *ultra vires* and could have sought indemnification, it was quick to hedge (albeit in a footnote) that such argument was not likely to be successful. Therefore, although the bankruptcy court had the discretion to deny the fee application in full or in part due to AT & G's failure to bring the potential conflict of interest to the court's attention prior to undertaking representation of all three defendants in the Standard Register litigation, it did not abuse its discretion in awarding fees as it reasonably believed that a joint defense by a corporation and its two key management officers was appropriate for the debtor. *See In re FSC Corp.*, 33 B.R. 212, 213–14 (Bankr.W.D.Pa. 1983) (prior court authorization for debtor's counsel to defend a suit that had been brought against its individual officers). This Court is poorly positioned to Monday-morning-quarterback that judgment call. *Rome*, 19 F.3d at 53–54.

### 5. *Compensation for representation of individuals*

■ Finally there is the question of how much compensation the court may award in the event it determines that compensation is due. "An attorney representing

an estate may be compensated only for services rendered to or for the benefit of the estate." *In re Transamerican Freight Lines, Inc.*, 40 B.R. 88, 92 (Bankr.E.D.Mich. 1984) (citing *Conrad, Rubin & Lesser v. Pender*, 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327 (1933)) (concerning a controversy personal to the stock owners and not relating to the property of the estate). Standard Register argues, and AT & G concedes, that AT & G may receive no compensation for any work that related only to the individual officers.

AT & G contends that compensation for the representation of Fitzgerald and Urquhart is proper because "a joint defense was agreed upon by all parties and the assistance of the officers was integral to any defense that the corporation could muster." Dkt. 4 at 4. Standard Bolton never demonstrated before the Bankruptcy Court that AT & G ever sought reimbursement for any expenses relating only to the individual defendant officers.

Standard Register also argues that, for work done for the benefit of all three defendants, AT & G should have divided its fees and expenses among all three, rather than seek payment solely from the debtor. Although AT & G suggests that the defense did not benefit Fitzgerald or Urquhart at all because the officers had no real interest in the litigation, Fitzgerald's and Urquhart's personal liabilities gave them substantial incentive to litigate. Their interest is evidenced by their retention of separate counsel for the appeal.

The question remains whether work done for the benefit of three defendants may be compensated in full by the bankruptcy estate of one. Fairness might dictate that the bill be divided evenly amongst the several beneficiaries. On the other hand, there is no evidence that Bolton would have paid any less for a separate defense as for a joint defense. Moreover, when the defenses largely overlap, as they did here, it may be more efficient to have joint counsel.

Courts have stated that "attorneys entitled to fees for services in bankruptcy and Chapter XI proceedings will have their fees reduced proportionately where their services were partly performed on behalf of private clients." *Cle–Ware Indus., Inc. v. Sokolsky (In re Cle–Ware Indus., Inc.)*, 493 F.2d 863, 873 (6th Cir.), *cert. denied,* 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53 (1974); *In re Transamerican Freight,* 40 B.R. at 92. However, each of these cases involved the portion of an attorney's fees that represented work done solely for the benefit of a private individual. These cases thus do not address how to measure compensation when work simultaneously performed for the debtor and its officers which equally benefitted the debtor as well as the private parties. *Cf. Cle–Ware Indus.,* 493 F.2d at 873 ("Where there is such a multiplicity of beneficiaries of one particular service, courts are anxious to see in the estate only a kind of secondary beneficiary of efforts made primarily for, and therefore to be compensated by, the directly interested creditors.") citing 3A Collier on Bankruptcy P. 62.12 at 1493 (14th ed. 1971); *FSC Corp.,* 33 B.R. at 213–14 (approving payment of fees by estate where defense was important to the estate and individuals derived only minimal benefit from representation).

Here, Standard Register concedes that there is no evidence that the debtor's attorneys fees were more expensive because defendants pursued a joint defense, or that any of the attorneys fees were solely for the benefit of the individuals. Therefore, the bankruptcy court did not abuse its discretion in determining that AT & G is entitled to fees, which include compensation for all time spent which substantially and directly benefitted the estate, even if it also benefitted the individual defendants.

### ORDER

The judgment of the bankruptcy court is **REVERSED** and **REMANDED** for proceedings consistent with this opinion.