**In re Peter M. SCHULTZ, Debtor.**

**Pamela SCHULTZ, Plaintiff-Appellee,**

v.

**Peter M. SCHULTZ, Defendant–
Appellant.**

**Civil Action No. 96–40124–WGY.**

United States District Court,
D. Massachusetts.

Dec. 12, 1996.

**276**

John M. Wozniak, Law Offices of John Wozniak, Medway, MA, for Appellant.

Alan S. Dambrov, Cooley, Shrair, Alpert, Labovitz & Dambrov, Springfield, MA, for Appellee.

## MEMORANDUM OF DECISION AND ORDER

YOUNG, District Judge.

This is an appeal from the determination of the Bankruptcy Court that a portion of the debt owed by Peter Schultz ("Peter") to his former wife, Pamela Schultz ("Pamela"), is in the nature of maintenance and support, and therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(5). *See In re Peter M. Schultz, Chapter 11*, No. 94–40735–HJB (D.Mass.1995) (Boroff, J.). Peter seeks reversal of the Bankruptcy Court ruling primarily on the ground that it is clearly erroneous, but otherwise asks that this Court reduce the amount of the debt obligation that is nondischargeable so as to reflect the payments he made to Pamela prior to filing for bankruptcy.

## I. STATEMENT OF FACTS

On May 12, 1989, Peter and Pamela executed a Property Settlement Agreement (the "Agreement") as part of a divorce settlement. The Agreement required Peter to make certain payments to and for the benefit of Pamela, including the monthly payments on a mortgage note obligation held by the Springfield Institution for Savings and secured by a mortgage upon real estate located at Brookdale Circle in Shrewsbury (the "Shrewsbury mortgage"). On February 24, 1994, Peter filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, listing Pamela as one of his secured creditors. Pamela then filed an adversary complaint seeking a determination that obligations under the Agreement totaling $321,616.59, to-gether with costs and attorneys fees, were nondischargeable under 11 U.S.C. § 523(a)(5).

The Bankruptcy Court held that, even though the Agreement characterizes all of Peter's obligations to Pamela as property distributions, the obligation to pay the Shrewsbury mortgage was in fact intended to provide for Pamela's maintenance and support, and is thus nondischargeable pursuant to section 523(a)(5). Trial Transcript, October 27, 1995 at 84–91. ("Tr.") Accordingly, the Bankruptcy Court entered judgment in favor of Pamela for $123,751.84, "the amount of the mortgage on the Shrewsbury property." Tr. at 91. Peter then filed this appeal.

## II. STANDARD OF REVIEW

A bankruptcy court applies a preponderance of the evidence standard when making determinations regarding the dischargeability of debts under section 523(a). *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). The party who objects to the discharge of a particular debt carries the burden of proof. *Gianakas v. Gianakas*, 917 F.2d 759, 761 (3d Cir.1990). A reviewing district court must accept the findings of fact by a bankruptcy court unless those findings are clearly erroneous. *See In re Bolton–Emerson, Inc.* 200 B.R. 725, 729–30 (D.Mass.1996). Conclusions of law are reviewed *de novo. Id.*

## III. DISCUSSION

Section 523(a)(5) excepts from discharge a debt "to a ... former spouse ... for alimony to, maintenance for, or support of such spouse ... in connection with a ... property settlement agreement...." 11 U.S.C. § 523(a)(5). The Congressional policy underlying this provision "has always been to ensure that genuine support obligations would not be discharged." *Shine v. Shine*, 802 F.2d 583, 588 (1st Cir.1986). As a result, courts must "look beyond the label attached to an obligation by a settlement agreement and examine its true nature." *Gianakas* 917 F.2d at 762.

"Whether a debt qualifies as support or alimony is determined under federal,

not state law, and depends on the intent of the parties at the time of the agreement." *Opolski v. Michaud,* Civ.A. No. 94–12020–GAO, 1995 WL 464931, *1 (D.Mass. July 25, 1995) (citations omitted). In making this assessment, a bankruptcy court is not limited to the four corners of the separation agreement. *Id.* Since the determination of the actual intent of the parties is a question of fact, it must be reviewed by this Court under the "clearly erroneous" standard. *See Vaudreuil v. Busconi,* 182 B.R. 618, 620 (D.Mass. 1995).

■ After considering the evidence in this case, the Bankruptcy Court held that at the time of the Agreement, the parties intended for the payments on the Shrewsbury mortgage to operate as a support obligation rather than a property distribution. In reaching this conclusion, the Bankruptcy Court properly considered the language and substance of the Agreement in light of the surrounding circumstances, each party's financial circumstances at the time of the Agreement, and the function served by the obligation at the time of the Agreement. *See In Re Michaels,* 157 B.R. 190, 193 (Bankr.D.Mass.1993) (citing *Gianakas,* 917 F.2d at 762–63). Although the Agreement itself characterized the Shrewsbury mortgage as a property distribution, the Bankruptcy Court determined that the language of the Agreement should not be given a "great deal of weight on the question of what was really intended because what was really intended was masked in an attempt to lower the tax impact." Tr. at 86. Indeed, the attorney who drafted the Agreement testified that the Agreement was drafted with tax implications in mind. Tr. at 24. The bankruptcy judge also made an independent calculation of Pamela's income and expenses. Tr. 89–90. When this calculation led to a monthly payment equivalent to the mortgage payment due on the Shrewsbury premises, it bolstered his conclusion that Peter and Pamela intended to create a support obligation through the vehicle of that payment. Having reviewed the record, this Court rules that the Bankruptcy Court's conclusion that the obligation to pay the Shrewsbury mortgage was a nondischargeable support obligation is not clearly erroneous.

■ Peter also asks this Court to reduce his nondischargeable obligation of $123,-751.84 by $100,000.00—the amount he paid to Pamela under the Agreement prior to filing his Chapter 11 petition. This would appear to be a last ditch attempt to avoid the force of the Bankruptcy Court ruling. Still, from the record before this Court, it is unclear whether the Bankruptcy Court considered the pre-petition payments made by Peter in calculating the extent to which the debt was not dischargeable. It is also unclear which part, if any at all, of the $100,000.00 could be considered as payment of a future support obligation. In order to resolve these ambiguities, this matter must be remanded to the Bankruptcy Court.

## IV. CONCLUSION

This Court affirms in part the determination of the Bankruptcy Court that $123,-751.84 was intended as a support obligation at the time of the divorce settlement agreement. The matter is, however, remanded so that the Bankruptcy Court may consider whether any portion of the pre-petition payment of $100,000 is to be credited against this future support obligation.

It is SO ORDERED.